KENECHI R. AGU, SBN 279846
kagu@kralegal.com
LAW OFFICES OF KENECHI R. AGU
3655 TORRANCE BLVD., SUITE 300
TORRANCE, CA 90503
(310) 431-9875 (tel)
(855) 372-5792 (fax)

Attorneys for Plaintiffs
Everette Silas and Sherri Littleton

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| EVERETTE SILAS**,** an individual; and ) <br> SHERRI LITTLETON, an individual, ) <br> ) <br> Plaintiffs, ) <br> ) <br>      vs. ) <br> ) <br> HOME BOX OFFICE, INC., a ) <br> Delaware Corporation; STEPHEN ) <br> LEVINSON, an individual; MARK ) <br> WAHLBERG, an individual; ) <br> DWAYNE JOHNSON, an individual; 7 ) <br> BUCKS ENTERTAINMENT, INC. ) <br> , a Florida Corporation; LEVERAGE ) <br> MANAGEMENT, INC., a California ) <br> Corporation; and DOES 1-10**,** inclusive, ) <br> ) <br> Defendants. ) <br> _____ ) | **Case No.  2:15-cv-9732** <br><br> **COMPLAINT FOR DAMAGES** <br> **AND INJUNCTIVE RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1.    This is an action for copyright infringement arising under the  - Cop. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and under its supplemental jurisdiction.

2.    Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(a) as a substantial part of the events or omissions giving rise to the claim occurred, and the defendants and/or their agents reside or may be found, in this judicial district.

**PARTIES**

3.    Plaintiff EVERETTE SILAS (hereinafter referred to as "SILAS", "PLAINTIFF", or "PLAINTIFFS") is an individual resident of Palmdale, California, who co-created an original motion picture trailer (the "Trailer"), screenplay (the "Screenplay"), and treatment (the "Treatment"), all entitled, "Off Season".

4.    Plaintiff SHERRI LITTLETON (hereinafter referred to as "LITTLETON", "PLAINTIFF", or "PLAINTIFFS") is an individual resident of Palmdale, California, who co-created an original motion picture trailer (the "Trailer"), screenplay (the "Screenplay"), and treatment (the "Treatment"), all entitled, "Off Season".

5.    PLAINTIFFS are informed and believe, and on that basis allege, that Defendant HOME BOX OFFICE, INC. (hereinafter referred to as "HBO" or "DEFENDANT" or "DEFENDANTS") is a corporation existing under the laws of Delaware, maintaining its principal place of business at 2500 Broadway, Suite 400, Santa Monica, CA 90404.  PLAINTIFFS are informed and believe, and on that basis alleges, HBO is qualified to do business, and is doing business, in the State of California, County of Los Angeles, and is active according to the California Secretary of State.  HBO maintains its agent for service of process in Los Angeles, California.  According to the Internet Movie Database ("IMDB"), HBO is a

distributor of the television series "Ballers" (the "Series") that airs on HBO, and is available digitally for purchase from HboNow.com, *inter alia*.

6.      PLAINTIFFS are informed and believe, and on that basis allege, that Defendant STEPHEN LEVINSON (hereinafter referred to as "LEVINSON" or "DEFENDANT" or "DEFENDANTS") is an individual residing in Los Angeles County, California.  PLAINTIFFS are further informed and believes, and on that basis alleges, that LEVINSON, is a director, writer, and producer with numerous film and television credits, and, according to IMDB, is the Creator of the Series.

7.      PLAINTIFFS are informed and believe, and on that basis allege, that Defendant MARK WAHLBERG (hereinafter referred to as "WAHLBERG" or "DEFENDANT" or "DEFENDANTS") is an individual residing in Los Angeles County, California.  PLAINTIFFS are further informed and believe, and on that basis alleges, that WAHLBERG, is an actor, director, writer, and producer with numerous film and television credits, and, according to IMDB, is the Executive Producer of the Series.  PLAINTIFFS are further informed and believe, and on that basis allege, that WAHLBERG is doing business in California under the fictitious business name "CLOSEST TO THE HOLE PRODUCTIONS".   According to IMDB, "CLOSEST TO THE HOLE PRODUCTIONS" is a producer of the Series.

8.      PLAINTIFFS are informed and believe, and on that basis allege, that Defendant DWAYNE JOHNSON (hereinafter referred to as "JOHNSON" or "DEFENDANT" or "DEFENDANTS") is an individual residing in Southwest Ranches, Florida.  PLAINTIFFS are further informed and believe, and on that basis allege, that JOHNSON, is an actor, director, writer, and producer with numerous film and television credits, and, according to IMDB, is the Executive Producer and Cast Member of the Series.

9.      PLAINTIFFS are informed and believe, and on that basis allege, that Defendant 7 BUCKS ENTERTAINMENT, INC. (hereinafter referred to as "7 BUCKS" or "DEFENDANT" or "DEFENDANTS") is a corporation existing

under the laws of Florida, maintaining its principal place of business at 9100 Wilshire Blvd., Suite 1000 West, Beverly Hills, CA 90212.  PLAINTIFFS are informed and believe, an on that basis allege, 7 BUCKS is qualified to do business, and is doing business, in the State of California, County of Los Angeles, and is active according to the California Secretary of State.  7 BUCKS maintains its agent for service of process in Los Angeles, California.  According to IMDB, 7 BUCKS is a production company on the Series.  PLAINTIFFS are informed and believe, an on that basis allege, 7 BUCKS is owned and controlled by JOHNSON and was given a copy of the Materials by JOHNSON.

10.    PLAINTIFFS are informed and believe, and on that basis allege, that Defendant LEVERAGE MANAGEMENT, INC. (hereinafter referred to as "LEVERAGE" or "DEFENDANT" or "DEFENDANTS") is a corporation existing under the laws of California, maintaining its principal place of business at 3030 Pennsylvania Ave, Santa Monica, CA 90404.  PLAINTIFFS are informed and believe, an on that basis allege, LEVERAGE is qualified to do business, and is doing business, in the State of California, County of Los Angeles, and is active according to the California Secretary of State.  LEVERAGE maintains its agent for service of process in Los Angeles, California.  According to IMDB, LEVERAGE is a production company on the Series.  PLAINTIFFS are informed and believe, an on that basis allege, LEVERAGE is owned and controlled by LEVINSON and was given a copy of the Materials by LEVINSON.

11.    PLAINTIFFS  are informed and believe and thereon allege that at all times mentioned in this Complaint, each DEFENDANT was the agent, servant, employee, partner, successor, assignee, joint venturer and/or franchisee of each of the remaining DEFENDANTS herein, and was at all times acting within the course and scope of said agency, service, employment, partnership, joint venture and/or franchise.  Moreover, PLAINTIFFS are informed and believe, and based thereon allege, that each act and omission hereinafter alleged on the part of any one

DEFENDANT was done with the approval and consent and was ratified by each of the remaining DEFENDANTS.

12.     PLAINTIFFS are further informed and believe and thereon allege that at all relevant times mentioned in this Complaint, each DEFENDANT may be held liable for the infringing acts committed by another to the extent that each DEFENDANT had the right and ability to control the infringing activities alleged herein and had a direct financial interest in such activities, regardless of whether each said DEFENDANT had intent or knowledge of the infringement alleged herein. Furthermore, PLAINTIFFS are informed and believe and thereon allege that at all relevant times mentioned in this Complaint each DEFENDANT who knowingly induced, caused or materially contributed to the infringement alleged herein, by another DEFENDANT herein but who may not have committed or participated in the infringing acts him or herself, may be held liable as a contributory infringer as each such DEFENDANT had knowledge, or reason to know, of the infringement.

## **GENERAL ALLEGATIONS**

13.     PLAINTIFFS SILAS and LITTLETON are the owners and copyright proprietors of an original motion picture trailer (the "Trailer"), screenplay (the "Screenplay"), and treatment (the "Treatment"), all entitled, "Off Season".  Each of the Trailer, Screenplay, and the Treatment (collectively the "Materials") are PLAINTIFFS' original work and were both written and created by them.  The Materials have all been submitted for copyright registration with the United States Copyright Office, with the Trailer identified by the Copyright Office under application #s 1-2770024488 and 1-2792588251, the Screenplay identified by the Copyright Office under application # 1-2766903861, and the Treatment identified by the Copyright Office under application # 1-2770024442.  (A true and correct copy of the receipts for application for copyright registration for the Materials are

attached hereto and incorporated by reference herein as Exhibit "1"). PLAINTIFFS reserve the right to amend this Complaint upon their receipt of registrations for the any of the Materials from the U.S. Copyright Office.

14.    In or around May 2007, PLAINTIFFS shared the Materials with Steve Mayer (hereinafter "MEYER"), who sat on the executive board of   IMG Productions, a sports programming company.   MEYER then shared the Materials with Chris Albrecht (hereinafter "ALBRECHT"), who was his fellow board member at IMG Productions at the time.   Also, at the time MEYER shared the Materials with ALBRECHT, ALBRECHT was the  acting Chief Executive Officer for Defendant HBO.   Therefore, PLAINTIFFS are informed and believe, and thereon allege that HBO had direct access to the Materials since its CEO was given a copy of the Materials.

15.    In or around May 2008, PLAINTIFFS, through a mutual friend, was introduced to Richard Brustein (hereinafter "BRUSTEIN") with the hopes of promoting their Materials and getting BRUSTEIN to finance and/or develop a motion picture based on their Materials.   Shortly after the introduction, PLAINTIFFS met with BRUSTEIN in person to pitch their Materials and discuss the possibility of jointly developing a motion picture adaptation of the Materials. The meeting went well and BRUSTEIN liked what he heard and saw.   One day after the meeting, BRUSTEIN requested and, as a result, PLAINTIFFS' sent a physical copy of the Materials to BRUSTEIN.

16.    During the time that PLAINTIFFS were in discussions with BRUSTEIN, BRUSTEIN was sharing office space with Mayhem Pictures, Inc. (hereinafter "MAYHEM").   At the time, MAYHEM was owned and operated by producers Mark Ciardi (hereinafter "CIARDI") and Gordon Gray (hereinafter "GRAY").   CIARDI and GRAY specialize in producing sports related motion pictures such as "The Game Plan" (2007), which starred Defendant JOHNSON, and "Invincible" (2006), which starred Defendant WAHLBERG.

Complaint for Damages and Injunctive Relief

17.    In or around September 2008, after numerous discussions with PLAINTIFFS, BRUSTEIN, because of CIARDI's and GORDON's experience of producing sports themed motion pictures, sought to bring CIARDI and GRAY into the his potential production and development deal, based on the Materials, with PLAINTIFFS.   To effectuate this, BRUSTEIN shared the Materials with CIARDI and GRAY.   After having reviewed the Materials, GORDAN and GRAY expressed an interest in developing and producing a motion picture based on the Materials and wanted to arrange a meeting with PLAINTIFFS.

18.    In or around November 2008, CIARDI invited PLAINTIFFS to come and meet with him along with GRAY and BRUSTEIN at MAYHEM's office in Santa Monica, California.   PLAINTIFFS attended the meeting and GRAY, BRUSTEIN, and CIARDI were present.   During the meeting, PLAINTIFFS presented the Materials and everyone present took an interest.  CIARDI informed PLAINTIFFS that he and GRAY produced two football motion pictures, one being "The Game Plan" (2007), which starred Defendant JOHNSON, and "Invincible" (2006), which starred Defendant WAHLBERG.   CIARDI also informed PLAINTIFFS that he envisioned JOHNSON and WAHLBERG playing the lead roles in "Off Season" and that, since he had a working relationship with them, he would share the Materials with them to get their input.  PLAINTIFFS believed that both JOHNSON and WAHLBERG would be a great fit for "Off Season" and agreed with CIARDI's decision to bring them in.  A few days after the meeting PLAINTIFFS sent the Materials directly to CIARDI for further review.

19.    PLAINTIFFS   are informed and believe and thereon allege that CIARDI and GRAY gave a copy of the Materials to JOHNSON and WALBERG, after the November 2008 meeting, as they said they would.

20.    PLAINTIFFS are further informed and believe and thereon allege that WAHLBERG gave a copy of the Materials to LEVINSON, his manager.

21.     Additionally, PLAINTIFFS are informed and believe and thereon allege that in or around December 2008, after WAHLBERG, JOHNSON, AND LEVINSON confirmed their interest in producing and developing "Off Season," CIARDI instructed MAYHEM's attorney, to draft a "Producer Attachment Agreement" for the possible development and production of "Off Season" (the "Agreement").

22.     In January 2009, MAYHEM's attorney drafted the Agreement and sent it to PLAINTIFFS for review and signature.  (A true and correct copy of the Agreement is attached hereto and incorporated by reference herein as Exhibit "2"). The agreement was between PLAINTIFFS and CIARDI, GRAY, BRUSTEIN, and others.  PLAINTIFFS refused to sign the Agreement because it came with a verbal condition that required PLAINTIFFS to remove their names from the "Created By" credits, which PLAINTIFFS were not willing to do.   Negotiations between CIARDI, GRAY, and BRUSTEIN ended shortly thereafter.

23.     PLAINTIFFS are informed and believe, and thereon allege, a true and correct visual representation on how the DEFENDANTS gained access to the Materials is attached hereto and incorporated by reference herein as Exhibit "3".

24.      When the Materials were presented to the DEFENDANTS, they were aware of the fact that the Materials were created by PLAINTIFFS and they understood that if any element of the Materials were used by them, they must first obtain the rights to the Materials in connection with appropriate compensation, and in accordance with entertainment industry custom and practice.

25.     PLAINTIFFS are informed and believe and on that basis allege, that on or around June 21, 2015, the pilot series "Ballers" aired on HBO, with JOHNSON starring in the lead role as "Spencer Strasmore" .  A recent review of the Internet Movie Database ("IMDB") webpage for the series "Ballers" confirms that Defendants LEVINSON, WALHBERG, and JOHNSON were accorded credit as executive producers of "Ballers",  Defendant LEVINSON was accorded credit

as the creator, and Defendants 7 BUCKS, LEVERAGE, and WALHBERG (d/b/a CLOSEST TO THE HOLE PRODUCTIONS) were accorded production credits.

26.    PLAINTIFFS are informed and believe and on that basis allege, that the more recent work, "Ballers", borrows heavily from the Materials and that certain aesthetic elements, including, without limitation, physical appearance of the characters and their vehicles, and plots, scenes, as well as story lines are virtually identical to the Materials that the DEFENDANTS had access to.   The stories, character traits, scenes, and incidents portrayed in the two works, "Ballers" and "Off Season", are, in many respects, virtually identical and strikingly similar. These substantially similar elements, coupled with the DEFENDANTS' direct access to the Materials, leaves little doubt that numerous elements of "Ballers" were copied from "Off Season".

## FIRST CLAIM FOR RELIEF
### (COPYRIGHT INFRINGEMENT (17 U.S.C. §§101 *et seq.*))
### (Against all Defendants)

27.    PLAINTIFFS re-alleges each and every allegation set forth in Paragraphs 1 through 26, inclusive, and incorporates them herein by this reference.

28.    PLAINTIFFS are currently, and at all relevant times mentioned herein have been, the sole proprietor of all right, title and interest in and to the copyrights in the Materials.

29.    PLAINTIFFS are informed and believes that DEFENDANTS are continuing with efforts to distribute "Ballers" in derogation of PLAINTIFFS' rights.

30.    Furthermore, given the direct access that DEFENDANTS had to the Materials, DEFENDANTS were knowingly and willfully involved in the copying of the Materials, and original elements therein, to create a work substantially similar to and derivative of PLAINTIFFS' copyrighted Materials.  PLAINTIFFS

are informed and believe, and on that basis allege, that a non-exhaustive summary of substantial similarities, including expressions of ideas and concepts between "Off Season" and "Ballers", based upon a review the entire first season of "Ballers", includes, without limitation, the following:

### (a) THEME

The theme of both works, "Ballers" and "Off Season", centers around the fast paced and lavish lives of professional football players in the off season and depicts that the antics that these football players engage in, such as partying, fights, infidelity, drug use, and contract talks, and the steps they take and sacrifices they make to keep those antics from becoming public.

### (b) PLOT

The plot in both works follows an African American football player who is essentially a business man who tries to monetize his friendships with other professional football players and athletes to help grow his business.   Also, this African American football player also serves as a "big brother/mentor" to other football players by looking out for them and taking care of their personal affairs.

### (c) SETTING

The setting of both works takes place in Miami, Florida and favors the lavish and extravagant million dollar lifestyles of professional football players.  Both works depict expensive boats, exotic cars, heavy drug use, and pretty women.

### (d) CHARACTERS

The characters in both works are strikingly similar.  "Nathanial B Hall" or "NBH", the main character in "Off Season", has traits that can be seen in several characters in "Ballers".  For example:

(1) "Spencer Strasmore" of "Ballers", as is "NBH", is an African American professional football player and business man that tries to monetize his relationship with other football players to help grow his business.  Also, both "NBH" and "Spencer Strasmore" suffered serious injuries and try to use their wisdom to help other football players out of their predicaments.

(2) "Ricky Jerret" of "Ballers", like "NBH", is African American and has a significant other who is Columbian.  Both men are cocky, drive fast sports cars, and struggle with infidelity.

(3) "Joe Krutel" of "Ballers", like "NBH", is a fun loving guy that parties and does drugs with the other football players.

<u>(e) MOOD</u>

Both "Off Season" and "Ballers" have a similar mood in that they are  a mixture of drama and comedy.  Also, both are fast paced club and party driven. Both works play all contemporary hip-hop and pop music.

<u>(f) PLOT/SCENE/DIALOGUE/CHARACTER SIMILARITIES</u>

A non-exhaustive list of some of the specific plot, scene, dialogue, and/or character similarities between the Material and the Series, without limitation, with referenced time codes and illustrative screenshots of "Ballers" and photographs contained in the Trailer is set forth below:

| OFF SEASON | BALLERS |
|---|---|
| 1. Opening sequences shows images of stadium lights.<br><br> | 1. Opening sequences shows images of stadium lights. |









| | |
|---|---|
| 2. Opening sequences shows images of a stadium.<br><br> | 2. Opening sequences shows image of a stadium.<br><br> |
| 3.  Opening sequences shows images focused on helmets.<br><br> | 3.  Opening sequences shows images focused on helmets.<br><br> |

Complaint for Damages and Injunctive Relief



| | |
|---|---|
| 3.  Lead character "Nathaniel Brandon Hall" (a.ka. "NBH") is cocky and drives a flashy sports car.<br><br> | 3.  Episode 1: 09:58 Lead character "Ricky Jerret" is cocky and drives a flashy sports car.<br><br> |
| 4. "NBH" does an in camera interview about how his off the field issues has affected his on the field play.<br><br> | 4. Episode 6, 22:35, "Ricky Jerret" does interview about how his off the field issues has affected his on the field play.<br><br> |
| 5. "NBH" wears a suit jacket, matching suit pants, plain white t-shirt, pocket square, and flashy chain during the interview with the sports reporter. | 5.  Episode 6, 24:53, "Ricky Jerret" wears a suit jacket, matching suit pants, plain white t-shirt, pocket square, and flashy chain during the interview with the sports reporter. |

| | |
|---|---|
|  |  |
| 6.  Lead character "Nathaniel Brandon Hall" (a.k.a. "NBH") has a Columbian wife named "Annamaria".  (Image of "Annamaria from the Trailer")<br><br> | 6.  Lead character "Ricky Jerret" has a Columbian girlfriend named "Annabella".  The name "Annabella" is very similar to "Annamaria", as used in the Off Season.  "Annabella" looks almost identical to "Annamaria" (Episode 8: 21:57) |
| 7. Image of "Annamaria" as depicted in the Trailer:<br><br> | 7.  Episode 1: 19:43 "Annabella" and wears "Annamaria" style clothing.<br><br> |

Complaint for Damages and Injunctive Relief



| | |
|---|---|
| 8. One of the lead characters and football player "Preach" snorts cocaine off a naked woman's body in a party setting as depicted in the Trailer.<br><br> | 8. Episode 3: 22:05 "Vernon" one of the lead characters and football player snorts cocaine off of a naked woman in a party setting.<br><br> |
| 9. "NBH" pays off a dirty cop to turn a blind eye.<br><br> | 9. Episode 5: 22:05 "Ricky Jerret" pays off a dirty cop to turn a blind eye.<br><br> |
| 10. In Episode 4 of the Treatment, "Preach" a prominent footballer player dies and players attend his funeral. | 10. Episode 1, 03:30, a prominent football player, "Rod", dies and players attend his funeral. |
| 11. After "Preach's" funeral a few players go to another player's house to party in commemoration of his death. (Described in Episode 4 of the Treatment) | 11. Episode 1, 09:30, a few players go to a club after "Rod's" funeral to commemorate his death. |
| 12. Plays all contemporary hip-hop | 12. Plays all contemporary hip-hop |

| | |
|---|---|
| and pop music, as evidenced in Trailer and the Treatment. | and pop music. |
| 13. Club and party driven, with lots of drugs, fancy cars and women as described in the Treatment. | 13. Lots of club and party driven scenes with lots of drugs, fancy cars, and women. |
| 14. "NBH", the lead character, works hard and struggles with protecting the other football players and keeping the dirt, cocaine, other drugs, and sexual exploits that happens in the "Off Season" club from being exposed. | 14. "Spencer Strasmore", is one of the lead characters, and works hard, and struggles, to protect other players from being exposed for doing cocaine, other drugs, and their sexual exploits. |
| 15. Depicts multiple "VIP" rooms, equipped with scantily clad women, drugs, stripper poles, hot tubs, extravagant beds to allow the multimillion dollar ballers to do whatever their deviant heart desires. | 15. Episode 6: 03:52, a "Fun House" is shown which depicts scantily clad women, private rooms for sex, striper poles, a sex pool called the "love pond", drugs, and extravagant beds. |
| 16. "NBH" handles a situation where individuals at the "Off Season" club, his company, are being blackmailed. | 16. In Episode 5, "Spencer Strasmore", handles a situation where his company, Anderson Financial, and other players are being blackmailed. |
| 17. "NBH's" alter ego is the fun loving guy that gets high with the players and parties just as hard as discussed in the Treatment and seen in the Trailer. | 17. "Spencer Strasmore's" partner, Joe Krutel, is a fun loving guy that also does drugs with the players and parties as they do. (Episode 3). |
| 18. Entire show takes place in "Miami". | 18. Entire show takes place in "Miami". |
| 19. Entire season takes place during the football "off season" and the | 19. Entire season takes place during the football "off season". The |

| | |
|---|---|
| concept of the "off season" is glamorized throughout the season. | concept of the "off season" is glamorized throughout the entire Season 1.  Also, Season 1 ends in Episode 10 right before the football season starts. |
| 20. Episode 4, as described in the Treatment, is titled "THE BALLERS BALL".  This is an extravagant party thrown by the "Off Season" club, and hosted by NBH, where the best in professional football show up ready for good times. | 20. Episode 3: 05:16 Anderson Financial, throws an extravagant party, hosted by Spencer Strasmore and his partner Joe Krutel, where the best in professional football show up ready for good times. |
| 21. Episode 4 is titled "THE BALLERS BALL". | 21. The title "Ballers," for the show, was derived from the title of "Off Season's" Episode 4. |
| 22. "NBH" is a business man who leverages his relationships with other football players to bring high end clientele to his club, "Off Season". | 22. "Spencer Strasmore" is a business man who tries to leverage his relationship with other football players to bring business to his company Anderson Financial. |
| 23. The Trailer contains a reference to Kobe Bryant's cheating scandal which happened about 12 years ago. | 23. Episode 8: 22:50 there is a reference to Kobe Bryant's cheating scandal which happed about 12 years ago. |
| 24. "NBH" the main character, is injured and at the end of his career, and decided to reinvent his career so he could take care of players like himself. | 24. "Spencer Strasmore" is injured and out of the game, and decided to reinvent his career so he could take care of players like himself. |
| 25. "NBH" plays for the "Miami Crocks". | 25. "Ricky Jerret" plays for the Miami Dolphins.  "Spencer Strasmore" retired from the Miami Dolphins. |
| 26. "NBH" constantly cheats on | 26. "Ricky Jerret" constantly cheats |

| | |
|---|---|
| "Annamaria" but she remains loyal by his side.  One day she will tire of his cheating ways and walks away. | on "Annabella" and she remained loyal by his side for a while.  She finally got fed up and walks away but she is waiting for him to say the right things so she can come back to him. |
| 27.  In Episode 4 of the Treatment, "NBH" throws a party on a boat. | 27. Episode 3, "Spencer Strasmore" throws a party on a boat. |

31.     PLAINTIFFS are further informed and believes, and on that basis alleges, that DEFENDANTS' copying of the Materials infringes PLAINTIFFS' copyright and that DEFENDANTS are distributing and intend to continue to distribute unauthorized works similar to and derivative of "Off Season".

32.     The natural, probable, and foreseeable result of DEFENDANTS' wrongful conduct has been and will continue to deprive PLAINTIFFS of the benefits of selling the Materials, and any other derivative work of the Materials, and to deprive PLAINTIFFS of the goodwill that would necessarily be associated therewith.

33.     PLAINTIFFS are informed and believes, and on that basis alleges, that it has lost and will continue to lose substantial revenues and has sustained damages as a result of DEFENDANTS' wrongful conduct and DEFENDANTS' production and sale of their infringing series.  DEFENDANTS' wrongful conduct has also deprived and will continue to deprive PLAINTIFFS of opportunities for expanding goodwill.

34.     PLAINTIFFS are informed and believes, and on that basis alleges, that unless enjoined by this Court, DEFENDANTS intend to continue their course of conduct and to wrongfully use, infringe upon, sell and otherwise profit from PLAINTIFFS' Materials and works derived from them.  As a direct and proximate result of the acts of DEFENDANTS alleged above, PLAINTIFFS have already suffered irreparable damage and have sustained lost profits.  PLAINTIFFS have no

adequate remedy at law to redress all of the injuries that DEFENDANTS have caused and intend to cause by their conduct.  PLAINTIFFS will continue to suffer irreparable damage and sustain lost profits until DEFENDANTS' actions alleged above are enjoined by this Court.

35.    By their actions alleged above, DEFENDANTS have infringed and will continue to infringe PLAINTIFFS' copyrights in and relating to the Materials by producing, distributing, and placing upon the market products which are derivative of PLAINTIFFS' copyrighted works.

36.    PLAINTIFFS are further entitled to recover from DEFENDANTS the damages, including attorneys fees, they have sustained and will sustain, and any gains, profits and advantages obtained by DEFENDANTS as a result of the DEFENDANTS' acts of infringement alleged above.

## SECOND CLAIM FOR RELIEF
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)
### (Against all Defendants)

37.    PLAINTIFFS re-alleges each and every allegation set forth in Paragraphs 1 through 36, inclusive, and incorporates them herein by this reference.

38.    In taking the actions alleged above, and in failing to take the actions as alleged above the DEFENDANTS engaged in extreme and outrageous conduct with the intent of causing, or reckless disregard of the probability of causing, emotional distress.

39.    The DEFENDANTS' actions were malicious, oppressive, and fraudulent.

40.    PLAINTIFFS suffered severe emotional distress and loss the ability to exclusively market, sale, reproduce, and create derivative works of the Materials.

41.    The emotional distress suffered by PLAINTIFFS is a direct and proximate result of the DEFENDANTS' conduct as set forth above

42.    The conduct of the DEFENDANTS, as set forth above, was so extreme that it exceeded all bounds of that usually tolerated in a civilized community.

43.    The conduct of the DEFENDANTS was intended to inflict injury and/or engaged in with the realization that injury would occur.

## **PRAYER FOR RELIEF**

**WHEREFORE**, PLAINTIFF prays for judgment against the DEFENDANTS as follows:

## **ON THE FIRST CLAIM FOR RELIEF**

1. That the Court find that DEFENDANTS have infringed PLAINTIFFS' copyrights in the Materials.
2. That the court find a substantial likelihood that DEFENDANTS will continue to infringe PLAINTIFFS' copyrights in the Materials unless enjoined from doing so.
3. That DEFENDANTS, their directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined from directly or indirectly infringing PLAINTIFFS' copyrights in the Materials or continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, or manufacture any works derived or copied from the Materials or to participate or assist in any such activity.
4. That DEFENDANTS, their directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined to return to PLAINTIFF any and all originals, copies, facsimiles, or duplicates of the Materials in their possession, custody, or control.

5. That DEFENDANTS, their directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined to recall from all distributors, wholesalers, jobbers, dealers, retailers, and distributors, and all others known to DEFENDANTS, any originals, copies facsimiles, or duplicates of any works shown by the evidence to infringe any copyright in the Materials.

6. That DEFENDANTS be enjoined to deliver upon oath, to be impounded during the pendency of this action and destroyed pursuant to judgment herein, all originals, copies, facsimiles, or duplicates of any work shown by the evidence to infringe any copyright in the Materials.

7. That DEFENDANTS be required to file with the Court and to serve on PLAINTIFFS, within 30 days after service of the Court's order as herein prayed, a report in writing under oath setting forth in detail the manner and form in which DEFENANTS have complied with the Court's order.

8. That at PLAINTIFFS' election, if so made, judgment be entered for PLAINTIFF and against DEFENDANTS for PLAINTIFFS' actual damages according to proof, and for any profits attributable to infringements of PLAINTIFFS' copyrights, in accordance with proof.

9. That at PLAINTIFFS' election, if so made, judgment be entered for PLAINTIFFS and against DEFENDANTS for statutory damages based upon DEFENDANTS' acts of infringement, pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*

10. That DEFENDANTS be required to account for all gains, profits, and advantages derived from its acts of infringement and for their other violations of law.

11. That all gains, profits, and advantages derived by DEFENDANTS from their acts of infringement and other violations of law be deemed to be held in constructive trust for the benefit of PLAINTIFFS.

12. That PLAINTIFF have judgment against DEFENDANTS for PLAINTIFFS' cost and attorneys' fees.

13. That the Court grant such other, further, and different relief as the Court deems proper under the circumstances.

## ON THE SECOND CLAIM FOR RELIEF

14. That PLAINTIFFS be awarded compensatory damages and costs of suits herein.

15. That PLAINTIFFS be awarded special damages according to proof.

16. That PLAINTIFFS be awarded punitive damages.

17. That the Court grant such other, further, and different relief as the Court deems proper under the circumstances.


Dated: December 17, 2015                    Law Offices of Kenechi R. Agu

                                            /s/ Kenechi R. Agu

                                            _____

                                            Kenechi R. Agu, Esq.

                                            Attorney for Plaintiffs


## DEMAND FOR JURY TRIAL

Defendant hereby requests a jury trial on all issues triable to a jury.


Dated: December 17, 2015                    Law Offices of Kenechi R. Agu

                                            /s/ Kenechi R. Agu

                                            _____

                                            Kenechi R. Agu, Esq.

                                            Attorney for Plaintiffs


Complaint for Damages and Injunctive Relief

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

Complaint for Damages and Injunctive Relief

**Registration #:** *-APPLICATION-*
**Service Request #:** 1-2792588251

## Mail Certificate

Kenechi Agu
3655 Torrance Blvd., Suite 300
Torrance, CA 90503

**Priority:** Routine        **Application Date:** October 15, 2015

## Correspondent

**Name:** Kenechi Agu
**Email:** kagu@kralegal.com
**Telephone:** (310)431-9875
**Address:** 3655 Torrance Blvd., Suite 300
Torrance, CA 90503

Registration Number
# *-APPLICATION-*

## Title

| | |
|---|---|
| **Title of Work:** | Off Season - Trailer (10 Min) |
| **Previous or Alternate Title:** | Off Season |

## Completion/Publication

**Year of Completion:** 2007

## Author

- **Author:** Everette Silas
  **Author Created:** entire motion picture
  **Citizen of:** United States

- **Author:** Sherri Littleton
  **Author Created:** entire motion picture
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Everette Silas
3410 Montellano Ave, Palmdale, CA, 93551, United States

**Copyright Claimant:** Sherri Littleton
3410 Montellano Ave, Palmdale, CA, 93551, United States

## Rights and Permissions

| | |
|---|---|
| **Name:** | Everette Silas |
| **Email:** | ezdoesit9000@yahoo.com |
| **Telephone:** | (310)801-8776 |
| **Address:** | 3410 Montellano Ave |
| | Palmdale, CA 93551 United States |

## Certification

**Name:**   Kenechi R Agu
**Date:**   October 15, 2015

**Registration #:** *-APPLICATION-*
**Service Request #:** 1-2770024488

## Mail Certificate

Law Offices of Kenechi R. Agu
Kenechi Agu
3655 Torrance Blvd., Suite 300
Torrance, CA 90503

**Priority:** Routine          **Application Date:** October 07, 2015

## Correspondent

**Organization Name:** Law Offices of Kenechi R. Agu
**Name:** Kenechi Agu
**Email:** kagu@kralegal.com
**Telephone:** (310)431-9875
**Address:** 3655 Torrance Blvd., Suite 300
Torrance, CA 90503

Registration Number

# *-APPLICATION-*

## Title _____

| | |
|---|---|
| **Title of Work:** | Off Season - Trailer (Full) |
| **Previous or Alternate Title:** | Off Season |

## Completion/Publication _____

| | |
|---|---|
| **Year of Completion:** | 2007 |

## Author _____

- **Author:** Everette Silas
  **Author Created:** entire motion picture
  **Citizen of:** United States

- **Author:** Sherri Littleton
  **Author Created:** entire motion picture
  **Citizen of:** United States

## Copyright Claimant _____

| | |
|---|---|
| **Copyright Claimant:** | Everette Silas<br>3410 Montellano Ave, Palmdale, CA, 93551 |
| **Copyright Claimant:** | Sherri Littleton<br>3410 Montellano Ave, Palmdale, CA, 93551 |

## Rights and Permissions _____

| | |
|---|---|
| **Name:** | Everette Silas |
| **Email:** | ezdoesit9000@yahoo.com |
| **Telephone:** | (310)801-8776 |
| **Address:** | 3410 Montellano Ave<br>Palmdale, CA 93551 |

## Certification _____

**Name:**  Kenechi R. Agu
**Date:**  October 07, 2015

**Registration #:**  *-APPLICATION-*
**Service Request #:**  1-2770024442

## Mail Certificate _____

Law Offices of Kenechi R. Agu
Kenechi Agu
3655 Torrance Blvd., Suite 300
Torrance, CA 90503

**Priority:**  Routine          **Application Date:**  October 07, 2015

## Correspondent _____

**Organization Name:**  Law Offices of Kenechi R. Agu
**Name:**  Kenechi Agu
**Email:**  kagu@kralegal.com
**Telephone:**  (310)431-9875
**Address:**  3655 Torrance Blvd., Suite 300
Torrance, CA 90503

Registration Number
# *-APPLICATION-*

## Title

| | |
|---|---|
| **Title of Work:** | Off Season - Treatment and Outline |
| **Previous or Alternate Title:** | Off Season |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2008 |

## Author

| | |
|---|---|
| **Author:** | Everette Silas |
| **Author Created:** | entire motion picture |
| **Citizen of:** | United States |
| **Author:** | Sherri Littleton |
| **Author Created:** | entire motion picture |
| **Citizen of:** | United States |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Everette Silas |
| | 3410 Montellano Ave, Palmdale, CA, 93551 |
| **Copyright Claimant:** | Sherri Littleton |
| | 3410 Montellano Ave, Palmdale, CA, 93551 |

## Rights and Permissions

| | |
|---|---|
| **Name:** | Everette Silas |
| **Email:** | ezdoesit9000@yahoo.com |
| **Telephone:** | (310)801-8776 |
| **Address:** | 3410 Montellano Ave |
| | Palmdale, CA 93551 |

## Certification

**Name:**   Kenechi R. Agu
**Date:**   October 07, 2015

**Registration #:** *-APPLICATION-*
**Service Request #:** 1-2766903861

## Mail Certificate

Law Offices of Kenechi R. Agu
Kenechi Agu
3655 Torrance Blvd., Suite 300
Torrance, CA 90503

**Priority:** Routine       **Application Date:** October 07, 2015

## Correspondent

**Organization Name:** Law Offices of Kenechi R. Agu
**Name:** Kenechi Agu
**Email:** kagu@kralegal.com
**Telephone:** (310)431-9875
**Address:** 3655 Torrance Blvd., Suite 300
Torrance, CA 90503 United States

Registration Number

# *-APPLICATION-*

## Title   ———————————————————————————

|  |  |
|---|---|
| **Title of Work:** | Off Season - Screenplay |
| **Previous or Alternate Title:** | Off Season |

## Completion/Publication  ————————————————————

|  |  |
|---|---|
| **Year of Completion:** | 2006 |

## Author  ———————————————————————————————

|  |  |
|---|---|
| • **Author:** | Everette Silas |
| **Author Created:** | entire motion picture |
| **Citizen of:** | United States |
| • **Author:** | Sherri Littleton |
| **Author Created:** | entire motion picture |
| **Citizen of:** | United States |

## Copyright Claimant  ——————————————————————

|  |  |
|---|---|
| **Copyright Claimant:** | Everette Silas<br>3410 Montellano Ave, Palmdale, CA, 93551 |
| **Copyright Claimant:** | Sherri Littleton<br>3410 Montellano Ave, Palmdale, CA, 93551 |

## Rights and Permissions  —————————————————————

|  |  |
|---|---|
| **Name:** | Everette Silas |
| **Email:** | ezdoesit9000@yahoo.com |
| **Telephone:** | (310)801-8776 |
| **Address:** | 3410 Montellano Ave<br>Palmdale, CA 93551 United States |

## Certification  ————————————————————————————

**Name:**   Kenechi R. Agu
**Date:**    October 07, 2015

# EXHIBIT 2

_____

**c/o Sloane, Offer, Weber and Dern LLP**
**9601 Wilshire Blvd., Suite 500**
**Beverly Hills, California 90210**
**Attention: David Weber, Esq. and A. J. Brandenstein, Esq.**

Dated as of December 15, 2008

Everette Lamar Silas and Sherri Sharlene Littleton
c/o ezdoesit9000@yahoo.com

**Re:     "Off Season"/ Producer Attachment Agreement**

Dear Everette and Sherri:

This letter sets forth the material terms of the agreement ("Agreement") between Everette Lamar Silas and Sherri Sharlene Littleton (collectively, "Owners"), on the one hand, and _____ ("Company") (which comprises of Mark Ciardi, Gordon Gray, Richard C. Brustein, Magnus Gustafsson, and Greg Haden), on the other hand, in connection with the possible development and production of a project which is initially intended to be produced as an internet webisode project, but may also be a feature film, television or other form of project to be exploited in any form of media, now known or hereafter devised (the "Project"), to be based on the webisode series owned and controlled by Owner entitled "Off Season" (which shall be referred to herein as the "Property").

1.      Owner hereby represents and warrants to the following:

(a).      Owner exclusively owns and controls all rights in and to the Property including those rights that may be required by a third party financier to develop and produce the Project;

(b).      None of the rights in and/or to the Property have heretofore been sold, assigned, licensed or otherwise transferred to any other person, firm or corporation by any instrument or agreement now valid or outstanding, nor have said rights been in any way encumbered, limited or diminished by any act or omission, and that said rights are free and clear of any and all liens or claims whatsoever;

(c).      Owner has the unrestricted right, power and authority to enter into and perform this Agreement and Owner will not enter into any agreement the performance of which would in anyway prevent, limit or restrict the performance of this Agreement.

2.      In consideration of Company's reasonable efforts to obtain third party financing for the development and production of the Project, Owner agrees that Company shall be attached to the Project as the exclusive producers thereof and shall have the exclusive right to "pitch" the Property to third party financiers during the period commencing on the date hereof and continuing thereafter for a period of twelve (12) months after Owner's signature of this Agreement (as indicated in the signature block below) ("Attachment Period"). During the Attachment Period, no party hereto shall have the right to proceed with the development, production, distribution and/or other exploitation of the Property or Project until the other parties have given their full and complete approval over the terms of their respective agreements, it being agreed by the parties that none of the parties hereto shall unreasonably withhold their approval so as to frustrate the development, production, distribution or other exploitation of the Project. Notwithstanding the foregoing, if, during the period of six (6) months following the expiration of the Attachment Period, Owner proceeds with development, financing and/or production of the Project

with a third party originally submitted the Property by Company during the Attachment Period, then Company shall remain exclusively attached to the Project and Property as set forth hereunder.

3.      In the event that Company or their representatives submit the Property to a third party during the Attachment Period (as may be extended pursuant to the last sentence of Paragraph 2., above) and such third party desires to finance the development and/or production of the Project, each of the parties hereto shall individually negotiate the terms of their respective agreement(s) with such third party. In this connection, Owner shall have full and complete reasonable approval over the transfer of the rights in the Property and the terms of the agreement(s) for such rights ("Rights Agreement"). Similarly, Company shall have full and complete reasonable approval over the producing services of Mark Ciardi, Gordon Gray, Richard C. Brustein, Magnus Gustafsson, and Greg Haden and the terms of the agreement(s) for such services.

4.      If Company is successful in setting up the Project for development and/or production with a third party financier within the Attachment Period (as may be extended pursuant to the last sentence of Paragraph 2., above), Owner hereby acknowledges and agrees that Company shall be attached as the exclusive producers of all subsequent productions based on the Project and/or Property, including, without limitation, all television, motion picture, stage and other productions based on the Project and/or the Property. Company shall have full and complete reasonable approval over the producing services of Mark Ciardi, Gordon Gray, Richard C. Brustein, Magnus Gustafsson, and Greg Haden and the terms of the agreement(s) for such services in connection with all such subsequent productions.

5.      Owner acknowledges and agrees that it is the essence of this Agreement that Owner acts reasonably under all circumstances in connection with the Property and the Project, including the negotiation of the Rights Agreement and Owner shall not act in any manner which may frustrate or delay the development and possible production and/or financing (and any agreements in connection therewith) of the Project or any subsequent productions.

6.      Owner acknowledges that Mark Ciardi and Gordon Gray are parties to a first-look overall agreement with Walt Disney Studios which may subject the Project and Property (including, without limitation, any license, assignment, sale or disposition thereof) to certain obligations ("Disney Obligations"). Owner hereby acknowledges and agrees that this Agreement and Company's and Owner's obligations will be subject to such Disney Obligations, if any.

7.      Neither party shall have the right to assign this Agreement or any of its rights or obligations hereunder to any third party.

8.      All disputes which may arise between Owner and Company under or with respect to this Agreement will be determined solely by arbitration in accordance with the rules of the American Arbitration Association pursuant to the procedures hereinafter set forth. In the event of a dispute, the aggrieved party shall serve upon the other party a notice in writing requiring arbitration and designating the first arbitrator. Within ten (10) business days thereafter the other party shall designate a second arbitrator by notice in writing duly given to the aggrieved party. The two arbitrators thus chosen shall appoint a third arbitrator within five (5) business days thereafter. If the third arbitrator is not appointed within such five (5) business day period, then either party may secure the appointment of a third arbitrator by application to the American Arbitration Association. When appointed, the three arbitrators shall determine the controversy by majority vote, except that if only one arbitrator has been appointed by the end of the first ten (10) day period mentioned above, then the first arbitrator shall be the sole arbitrator. The arbitration shall be held in Los Angeles, California and the cost thereof, including

reasonable attorneys' fees, shall be borne by the party which does not prevail therein. Such determination by the arbitrators or by the sole arbitrator, whatever the case may be, shall be final, binding and conclusive upon the parties hereto and shall be rendered in such form that it may be judicially confirmed under the laws of the State of California.

9.     All notices hereunder shall be in writing and shall be given either by personal delivery, telegram, telex or telecopy (toll prepaid), or by registered or certified mail (postage prepaid) to the appropriate party at the addresses indicated above, unless the parties notify each other in writing of different addresses.

10.     Each party agrees to execute such further documents (after reasonable opportunity to review the same and comment thereon) consistent herewith as the other party may from time to time deem reasonably necessary and desirable to carry out the purposes of this Agreement.

11.     This Agreement will be deemed to be executed in the State of California and will be construed in accordance with the laws of the State of California applicable to contracts entered into and wholly performed therein. This Agreement reflects the valid and binding obligations of the parties with respect to the subject matter hereof, and contains the entire agreement of the parties and supersedes any prior or contemporaneous agreements (oral and written) between Company and Owner pertaining thereto. This Agreement may be modified only by a written instrument signed by all of the parties to be bound thereby.

Please indicate your agreement with the foregoing by signing in the space provided below.

**ACCEPTED AND AGREED TO:**

_____

By: _____

Its: _____


_____
MARK CIARDI


_____
GORDON GRAY


_____
RICHARD C. BRUSTEIN


_____
MAGNUS GUSTAFSSON


_____
GREG HADEN


AJ/CLIENTFILES/COMPANY
ATTACHMENT/OFF SEASON
3

_____
EVERETTE LAMAR SILAS

SOCIAL SECURITY NUMBER: _____


_____
SHERRI SHARLENE LITTLETON


SOCIAL SECURITY NUMBER: _____


Date Signed: _____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

Complaint for Damages and Injunctive Relief

# "Off Season" Distribution Chart



Everette Silas

Sherri Littleton

Mark Ciardi

Gordon Gray

Richard Bruestein

Steve Mayer

Mark Wahlberg (left) with Gordon Gray (right)

Dwayne Johnson (center) with Gordon Gray (left) and Mark Ciardi (right)

Chris Albrecht (former HBO CEO)

Steve Levinson (right) with Mark Wahlberg (left) and Chris Albrecht (center)