KELLEY DRYE & WARREN LLP
  Lee S. Brenner (State Bar No. 180235)
  Sarah L. Cronin (State Bar No 252624)
  Ken D. Kronstadt (State Bar No. 259996)
10100 Santa Monica Boulevard
Twenty-Third Floor
Los Angeles, CA 90067-4008
Telephone:   (310) 712-6100
Facsimile:   (310) 712-6199
lbrenner@kelleydrye.com
scronin@kelleydrye.com
kkronstadt@kelleydrye.com

Attorneys for Defendants Home Box Office,
Inc., 7 Bucks Entertainment, Inc., Leverage
Management, Inc., Dwayne Johnson, Mark
Wahlberg and Stephen Levinson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERETTE SILAS., an individual; and SHERRI LITTLETON, an individual, Plaintiffs, v. HOME BOX OFFICE, INC., a Delaware Corporation; STEPHEN LEVINSON, an individual; MARK WAHLBERG, an individual; DWAYNE JOHNSON, an individual; 7 BUCKS ENTERTAINMENT, INC., a Florida Corporation; LEVERAGE MANAGEMENT, INC., a California Corporation; and DOES 1-10, inclusive, Defendants. | Case No.  2:15-cv-09732 GW (FFMx) Hon. George H. Wu **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** **[Fed. R. Civ. P. 12(b)(6)]** Date:      July 11, 2016 Time:      8:30 a.m. Courtroom: 10 Trial Date:   None set [*Request for Judicial Notice; Declaration of Lee S. Brenner; Notice of Lodging; and [Proposed] Order filed concurrently herewith*] |

723508

TO THE COURT, PLAINTIFFS AND THEIR COUNSEL:

PLEASE TAKE NOTICE that on July 11, 2016, at 8:30 a.m., or as soon thereafter as the parties may be heard, before the Honorable George H. Wu, United States District Court Judge, in Courtroom 10, located at 312 N. Spring Street, Los Angeles, CA 90012, Defendants Home Box Office, Inc., 7 Bucks Entertainment, Inc., Leverage Management, Inc., Dwayne Johnson, Mark Wahlberg and Stephen Levinson (collectively, "Defendants") will and hereby do move to dismiss the First Amended Complaint ("FAC") of Plaintiffs Everette Silas and Sherri Littleton ("Plaintiffs"), with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Good cause exists to grant the motion because Plaintiffs cannot state a claim for copyright infringement as a matter of law.  A simple viewing of the works at issue here – namely Plaintiffs' four *Off Season* works (the "full" trailer, the "10MIN" trailer, a screenplay and a "treatment and outline"), on the one hand, and the HBO Original Series *Ballers*, on the other – reveals that there is no substantial similarity between them within the meaning of the Copyright Act.

This motion is based upon this Notice of Motion and Motion; the accompanying Declaration of Lee S. Brenner ("Brenner Decl."); the Request for Judicial Notice ("RJN"); the Notice of Lodging; the pleadings in this action and documents attached thereto and referenced therein; and on such other briefs, oral argument and documentary matters as may be presented to this Court at or before the hearing on this motion.

This motion is made following a conference of counsel pursuant to Local Rule 7-3 which took place on April 4, 2016.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: April 15, 2016

KELLEY DRYE & WARREN LLP
Lee S. Brenner
Sarah L. Cronin
Ken D. Kronstadt

By   /s Lee S. Brenner
          Lee S. Brenner
Attorneys for Defendants Home Box Office,
Inc., 7 Bucks Entertainment, Inc., Leverage
Management, Inc., Dwayne Johnson, Mark
Wahlberg and Stephen Levinson

1
2

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................1

II.     FACTS ...............................................................................................1

        A.      Background ...........................................................................1

        B.      Plaintiffs' Works .................................................................3

                1.      The *Off Season* Trailer ("Full" Version) ...................3

                2.      The "10MIN" *Off Season* Trailer ..............................5

                3.      The *Off Season* Screenplay.......................................6

                4.      Plaintiffs' Episode Outline Of *Off Season*................7

        C.      Defendants' *Ballers*............................................................8

III.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED .......................11

        A.      The Standards For Copyright Infringement Dictate That This
                Case Be Dismissed With Prejudice......................................11

        B.      There Is No Substantial Similarity Between Any Protectable
                Elements In Plaintiffs' Works And *Ballers* ........................14

                1.      There is No Similarity in Plot..................................14

                2.      There is No Similarity in Themes.............................16

                3.      There is No Similarity in Characters ......................16

                4.      There is No Similarity in Setting.............................20

                5.      There is No Similarity in Mood................................21

                6.      There is No Similarity in Pace.................................21

                7.      There is No Similarity in Dialogue..........................22

                8.      There is No Similarity in Sequence of Events.........22

                9.      Plaintiffs' Chart of Alleged Similarities Does Not Support
                        Their Claim ..........................................................23

IV.     CONCLUSION ..................................................................................25

DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Murdoch*,
  2011 WL 2802923 (S.D.N.Y. 2011) ........................................................ 20

*Anderson v. Paramount Pictures Corp.*,
  617 F. Supp. 1 (C.D. Cal. 1985).........................................................23-24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 11

*Benay v. Warner Bros. Entm't, Inc.*,
  607 F.3d 620 (9th Cir. 2010) ..........................................................23, 24-25

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985) ........................................................ 14, 15, 23

*Bethea v. Burnett*,
  2005 U.S. Dist. LEXIS 46944 (C.D. Cal. 2005) ................................... 15

*Cano v. A World Of Difference Inst.*,
  1996 U.S. Dist. LEXIS 8161 (N.D. Cal. 1996) .................................... 11

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) ......................................................... 12, 13

*Christianson v. West Pub. Co.*,
  149 F.2d 202 (9th Cir. 1945) ............................................................... 11

*Comins v. Discovery Commc'ns, Inc.*,
  200 F. Supp. 2d 512 (D. Md. 2002) ..................................................... 17

*Counts v. Meriwether*,
  2015 WL 9594469 (C.D. Cal. 2015) .................................................... 19

*Eaton v. Nat'l Broad. Co.*,
  972 F. Supp. 1019 (E.D. Val. 1997) ..................................................... 16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) .......................................................................11, 25

*Flaherty v. Filardi*,
  388 F. Supp. 2d 274 (S.D.N.Y. 2005) .................................................. 21

*Funky Films, Inc. v. Time Warner Entm't Co.*,
  462 F.3d 1072 (9th Cir. 2006) .......................................................11, 13

*Gilbert v. New Line Prods.*,
  2009 U.S. Dist. LEXIS 130675 (C.D. Cal. 2009) ......................... 12, 13, 14

*Gilbert v. New Line Prods., Inc.*,
  2010 U.S. Dist. LEXIS 141516 (C.D. Cal. 2010) ......................... 12, 13, 24

*Green v. Schwarzenegger*,
  1995 WL 874191 (C.D. Cal. 1995) ...................................................... 18

*Hogan v. DC Comics*,
  48 F. Supp. 2d 298 (S.D.N.Y. 1999) ................................................... 19

*Idema v. Dreamworks, Inc.*,
  162 F. Supp. 2d 1129 (C.D. Cal. 2001) ............................................... 13

*Identity Arts v. Best Buy Enter. Servs. Inc.*,
  2007 WL 1149155 (N.D. Cal. Apr. 18, 2007).................................... 11

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ............................................................. 13

*Kouf v. Walt Disney Pictures & Television*,
  16 F.3d 1042 (9th Cir. 1994) .................................................. 13, 15, 23

*Lake v. Columbia Broad. Sys.*,
  140 F. Supp. 707 (S.D. Cal. 1956) ....................................................... 11

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ....................................................... 23, 25

*Mir v. Little Co. of Mary Hosp.*,
  844 F.2d 646 (9th Cir. 1988) ............................................................... 14

*Muller v. Twentieth Century Fox Film Corp.*,
  794 F. Supp. 2d 429 (S.D.N.Y. 2011) ................................................ 20

*Nichols v. Universal Pictures Corp.*,
  45 F.2d 119 (2d Cir. 1930) .................................................................. 15

*Olson v. Nat'l Broad. Co.*,
  855 F.2d 1446 (9th Cir. 1988) ................................................. 17, 18, 22

*Pelt v. CBS, Inc.*,
  1993 U.S. Dist. LEXIS 20464 (C.D. Cal. Oct. 25, 1993) .................... 12

*Risdon v. Walt Disney Prods.*,
  1984 WL 1181 (S.D.N.Y. 1984) ......................................................... 22

*Rose v. Connelly*,
  38 F. Supp. 54 (S.D.N.Y. 1941) .......................................................... 18

*Sams v. Yahoo! Inc.*,
  713 F.3d 1175 (9th Cir. 2013) ............................................................. 13

*Shame on You Prods. Inc. v. Banks*,
  2015 WL 4885221 (C.D. Cal. 2015) .................................................... 20

*Shaw v. Lindheim*,
  809 F. Supp. 1393 (C.D. Cal. 1992) .................................................... 18

*Sheldon Abend Revocable Trust v. Spielberg*,
  748 F. Supp. 2d 200 (S.D.N.Y. 2010) ................................................. 15

DEFENDANTS' MOTION TO DISMISS

*Shwarz v. United States,*
   234 F.3d 428 (9th Cir. 2000) ............................................................... 13, 14

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir. 2001) ....................................................................... 14

*Steckman v. Hart Brewing, Inc.,*
   143 F.3d 1293 (9th Cir. 1998) .................................................................... 14

*Walker v. Time Life Films, Inc.,*
   615 F. Supp. 430 (S.D.N.Y. 1985) ............................................................ 14

*Walker v. Time Life Films, Inc.,*
   784 F.2d 44 (2d Cir. 1986) ......................................................................... 17

*Webb v. Stallone,*
   910 F. Supp. 2d 681 (S.D.N.Y. 2012) ...................................................... 19

*Williams v. Crichton,*
   84 F.3d 518 (2d Cir. 1996) ................................................ 12, 13, 14, 17, 23

*Zella v. E.W. Scripps Co.,*
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...................................... 11, 12, 13, 14

**Statutes**

17 U.S.C. § 101 ................................................................................................. 3

Fed. R. Evid. 201 ............................................................................................. 13

DEFENDANTS' MOTION TO DISMISS

723508

# I.  <u>INTRODUCTION</u>

Plaintiffs Everette Silas and Sherri Littleton ("Plaintiffs") contend that they are entitled to at least $200,000,000 on the ground that the HBO Original Series *Ballers* infringes their copyright interests in their four works, each entitled *Off Season*.  (FAC ¶ 36).  Plaintiffs' claim fails as a matter of law.

The Court need do nothing more than review the works themselves to conclude that Plaintiffs' complaint should be dismissed.  The *Off Season* works, on the one hand, and *Ballers*, on the other, are so radically different that there can be no reasonable finding of substantial similarity as a matter of law.

The works bear absolutely *no* similarity in their expression – *i.e.*, in plot, theme, dialogue, mood, setting, pace, characters and sequence of events.  Plaintiffs' *Off Season* is an unremittingly dark drama primarily set within a nightclub – a den of iniquity where drugs and prostitutes are procured for the owner (a professional football player) and patrons alike; dirty police officers are handcuffed, beaten and bribed; pornography is filmed; and gunshots and violence are commonplace.  *Ballers*, by contrast, is a sundrenched comedy about the careers, financial struggles and relationships of current and former professional football players.  Plaintiffs' self-serving chart of purportedly similar elements – consisting solely of unprotectable elements and manufactured comparisons – cannot create substantial similarity where none exists.  Sometimes there are close calls in copyright cases.  This is not one of those times.

# II.  <u>FACTS</u>

## A.    **Background**

Plaintiffs' claim is premised on the notion that the first season of *Ballers* somehow infringes on their four *Off Season* works.  (FAC ¶¶ 13, 26-36.)  The first episode of *Ballers* premiered on HBO on June 21, 2015.  (*Id.*, ¶ 25.)  Over three months later, in October 2015, Plaintiffs applied for copyright registration for their works.  (*Id.*, ¶ 13 & Ex. 1; *see also* Brenner Decl., Exs. 1-4 (certified copies of

1    Plaintiffs' trailers, screenplay and episode outline).)

2          Prior to publication of any of the works at issue here, entertainment in many

3    forms had long featured the off-field lifestyles of professional football players.

4    (*See generally* Defendants' Request for Judicial Notice ("RJN").)  From films such

5    as *North Dallas Forty* (1979), *Any Given Sunday* (1999) and *The Replacements*

6    (2000), to television series such as ESPN's *Playmakers* (2003), CBS's *The Game*

7    (2007) and the HBO Original Series *1ˢᵗ & Ten* (1984-1991), one need not look very

8    hard to find stories about life in the fast lane of professional football players.  (*Id.* at

9    4:18-12:2.)  Novels also include the same types of characters and the same

10   elements.  (*Id.* at 6:4-10, 8:5-9:5, 10:1-4, 10:23-11:4) (identifying numerous

11   books).

12         Not surprisingly, a number of common elements permeate these creative

13   works.  Stadiums, stadium lights, flashy cars, flashy chains/bling, drug abuse, hip-

14   hop music, hard partying, fights, beautiful women and infidelity are staples of and

15   standard to American cinema, television, and literary works about the off-field lives

16   of professional football players.  (*See* RJN at 4:18-12:2.)  These elements typically

17   appear in combination with each other.  For example, *Any Given Sunday* and *The*

18   *Game* both feature flashy cars; hard partying; hip-hop music; drug use; beautiful

19   women; infidelity; and a star player who is cocky, drives a flashy car, wears a large

20   gold chain, and is interviewed by the press regarding what is going on in his life off

21   the field.  (*Id.* at 6:7-23, 9:6-27,10:5-22.)  The series *Playmakers* also was centered

22   on professional football players and featured beautiful women, bling, cocaine

23   abuse, raging parties, a television interview about off-field conduct, fights, hip-hop

24   music, fancy cars and dance clubs.  (*Id.* at 7:9-8:4.)  Published news reports about

25   NFL players' off-field lives contain many of these same elements.  (*Id.* at 11:14-

26   12:2.)

27         Consistent with the prevalence of these elements in other works containing

28   characters who are professional football players, Plaintiffs do not allege that they

1   own these ideas.  Rather, Plaintiffs' claim can rest only on their version of these

2   oft-used ideas as expressed in their own works.  (FAC at 9:26 - 10:11.)

3   **B.    Plaintiffs' Works**

4       Each of Plaintiffs' four *Off Season* works is a grim drama which takes place

5   primarily in a nightclub called the "Off Season," where "dirty sexy stuff [is] put

6   right in your f*cking face."  (Brenner Decl., Ex. 1, Trailer at 5:55.)  The story itself

7   focuses on the "non-stop 'self-indulgent' maze" of debauchery of the lives of

8   professional football players during the off season.  (*Id.*, Ex. 1, Trailer, *generally*;

9   *see also* Ex. 4, Episode Outline at 3.)[1]  None of Plaintiffs' works include any scenes

10  or stories which take place during the football season, on the field, or in any team

11  facility.  While some of the characters are professional football players, the viewer

12  never sees the business side of football in Plaintiffs' works – negotiating contracts;

13  navigating the practice field or the locker room; and interacting with owners,

14  general managers, and coaches does not occur in *Off Season*.

15      **1.    The *Off Season* Trailer ("Full" Version) (Brenner Decl., Ex. 1)**

16      Viewing the full *Off Season* trailer, which in large part is a depiction of

17  Plaintiffs' screenplay, reveals that the work is a gritty drama focusing on the

18  oftentimes illegal activities of "NBH", a star quarterback for the fictitious Miami

19  Crocks football team, during the off-season.  Each scene in the 25-minute trailer is

20  narrated in voiceover by "NBH" and takes place during an opening night of his

21  "Off Season" nightclub.[2]  The story is framed within a single night.

22      The trailer begins with a lengthy musical performance of a band shown

23  onstage in NBH's club, and which includes lyrics such as "it's the off season and

24  there is no reason not to party."  The narration picks up from the lyrics, whereby

25

26  _____

27  [1] Although under the Copyright Act, "where the work has been prepared in different versions, each version constitutes a separate work," 17 U.S.C. § 101, Plaintiffs' four works here are largely overlapping in content.

28  [2] The "Off Season" club apparently operates only during the off-season, and therefore there are several "opening nights" of the club.

NBH tells the viewer that he created the club as a safe place for pro athletes "to get their party on," and that "the cops keep a close eye on [his] place hoping to catch one of the players playing dirty. Well, they don't have to do much to succeed." Later in the trailer, again through narration, NBH reinforces the nature of the main character, the tone and the story – first, when he introduces himself (proclaiming that his initials stand for "No Black H*'s") and Courtney Devine (an ex-porn star turned madam). (*See* Brenner Decl., Ex. 1, Trailer at 1:55 & 10:14.) And then when he explains that in the club, he makes sure that there is "lots of weed," "lots of X" and "sex and more sex"; that he likes "explaining stuff to ho*s who didn't give a damn about [him] when he was broke"; and that he loves to smoke a lot of "weed." (*Id.* at 5:10.)

The trailer continues in a non-linear fashion, with three general story arcs: NBH's brother's efforts to "clean up" a cocaine-addicted kicker, NBH's involvement with prostitutes and his troubled marriage, and the interplay between NBH and a corrupt police officer who shakes him down for money in exchange for turning a blind eye towards the continuous illegal activities in his club.

After the initial musical performance, the viewer sees a brief scene in which a woman screams as two unidentified men appear to be getting up after a struggle. Later, the trailer introduces (via voiceover) the two men: Preach, a rookie kicker, who is shown snorting cocaine off of a naked woman's back in the club's VIP room and who earned his nickname by preaching gospel when he is high, and NBH's big brother, Bingo, a former defensive coach who was fired for possessing cocaine and who beats Preach up. The trailer does not return to this particular piece of the story until the very end, in a scene where Bingo vows to force Preach to get clean, Preach shows him a gun, and the gun goes off as they struggle. No one appears to be hit, but a man is shown on the floor behind the couch, having overdosed.

Another piece of the narrative, focusing on NBH's infidelity and involvement with prostitutes, takes place as a flashback to the very first "opening"

DEFENDANTS' MOTION TO DISMISS
723508

night of the club.  The viewer sees NBH and Devine negotiate fees for the services of Devine's prostitutes, after which NBH pays Devine while a police detective watches.  Later, still flashing back to the first night of the club opening, NBH and his wife Anamaria tearfully discuss why she cheated on him.  After a flashback within a flashback showing Anamaria and NBH in happier times, and during which NBH narrates that Anamaria was innocent until she met him, Anamaria raises his use of steroids and Viagra, and his infidelity.  They nevertheless apologize and say that they love each other, but before they can fully reconcile, Devine intrudes with her new prostitutes.  Anamaria storms out, and Devine offers NBH "two new girls" and invites him to come see the set where she films pornography at his club.

A third story arc also takes place in flashback to the first night of the "Off Season" club.  The viewer sees Detective Light and another police officer meet with Anamaria and Bingo in the club's office, shaking them down for money. When NBH shows up and gives the detective less money than she demanded and she complains, the police officer who is with her is beaten by club thugs in a back room.  Bingo and Detective Light speak privately, and after a brief exchange, she and Bingo start to have sex.

NBH's narration is ever-present throughout all of these scenes.  Also interspersed throughout the trailer are black-and-white cutaways, in which NBH is being interviewed about his off-field activities.  The trailer concludes as it opened, with a nearly two-minute long musical performance.

### 2.    The "10MIN" *Off Season* Trailer (Brenner Decl., Ex. 2)

The short trailer, which despite its title as stated in the Copyright Registration runs 14-minutes, begins with NBH's voiceover narration as he introduces himself during a 10-second montage of football helmets, stadium lights and a locker room, each image of which is drained of color and lasts less than one second.  What follows is merely a condensed version of the longer trailer.

### 3.    The *Off Season* Screenplay (Brenner Decl., Ex 3)

There is a great deal of crossover between the full trailer and the screenplay. The latter also depicts the opening night of the "Off Season" club, and each scene takes place at "NIGHT."  (Brenner Decl., Ex. 3 at 1-4, 6-12, 14-15, 18, 20-21, 25-26, 28-31.)  The story also is narrated, although in the screenplay at different times by NBH, Anamaria and Devine. (*Id.* at 2-4, 7, 9, 11, 21, 24.)  NBH is introduced as an NFL quarterback in the third year of a $20 million contract who also is a "club owner, cocky, arrogant, sex addict [who] [d]oesn't like black women." (*Id.* at 2, 6, 23, 24, 30.)  NBH operates the club with Anamaria, and the couple's relationship is falling apart due to infidelity and NBH's steroid and Viagra use.  (*Id.* at 20-21, 23-24, 30, 31.)  NBH's young daughter "Lil Mommah" is learning the ropes about nightclub management.  (*Id.* at 11-13, 18-20.)

Like the full trailer, the screenplay is told in a non-linear fashion, with frequent scene cuts and flashbacks.  It introduces many of the same core characters as the full trailer and tells essentially the same story.  (*Id.* at 4-12, 16-18, 21 & 23.)

The screenplay begins with Detective Light's attempted shakedown of Bingo and Anamaria – just as in the full trailer, NBH shows up, pays less than requested, Detective Light complains, and a police officer accompanying her is handcuffed and beaten.  (*Id.* at 12-15, 18, 20-23.)  Bingo and Light flirt and nearly have sex, but Light continues to demand that she be paid and later exits the club, money in hand, and turns a blind eye to a fight at the club.  (*Id.* at 22-23, 27.)

The screenplay also covers NBH's arrangement with Devine, who furnishes prostitutes for NBH and maintains discretion.  (*Id.* at 5-9.)  In exchange, NBH pays Devine and allows her to use the building in the back of the club as a set to shoot pornography.  (*Id.* at 5-9, 24-25.)  The marital discord between NBH and Anamaria is addressed, as well as an additional storyline about NBH's daughter working at the club arranging musical performances.  (*Id.* at 11-13, 18-20, 21, 23-24, 30, 31.)

The narrative includes Bingo's efforts to get Preach to stop using drugs,

1   which leads to a violent struggle between them, resulting in an inadvertent gunshot

2   at the same time an unidentified club patron is overdosing.

3        Just as in the trailer, the story in the screenplay is frequently interrupted by

4   flashbacks to an interview with NBH about whether his "play time" is affecting his

5   on-field performance, whether he is broke, and whether he has a girlfriend who is a

6   "porn star." The debauchery in the club's VIP room and "porn set" also are

7   interspersed throughout the screenplay. (*Id*. at 1-4, 6-7, 9-10, 15, 25, 28-29 & 31.)

8        The screenplay closes with a stage performance, the introduction of a

9   "mystery girl," and the credits rolling while Anamaria salsas and a bodyguard

10   pushes NBH to dance with her. (Brenner Decl., Ex. 3 at 31-32.)

11       **4.    Plaintiffs' Episode Outline Of *Off Season* (Brenner Decl., Ex. 4)**

12        Plaintiffs' episode outline provides an introduction to the main characters,

13   along with each character's back story, largely mirroring the characters'

14   descriptions in the trailers and screenplay, although NBH's daughter Franee is now

15   occasionally referred to as Zoe. (*See* Brenner Decl., Ex. 4.) The outline explains

16   that there is a "[c]elebrity performance at [the] end of every episode" (*id*. at 3) and

17   provides proposed storylines for additional episodes, all of which take place during

18   the off season and none of which show anyone actually playing football or

19   engaging in any football-related activities.

20        Episode 2 opens with a lesbian love scene with Devine, followed by a police

21   officer knocking on the window of an SUV. Inside are a news reporter and the

22   team owner's son who overdosed. Back in the club, NBH is shot while breaking up

23   a fight between Anamaria and Devine. (*Id*. at 3-4.)

24        Episode 3 opens with NBH recovering in the hospital, telling Franee that he

25   wishes he could have done things differently. NBH wants to keep Franee from

26   being seduced by his corrupt lifestyle. NBH hallucinates, violently slaps his

27   daughter, and is recorded smoking pot on a child's cell phone. The video is posted

28   on YouTube. (*Id*. at 4-5.)

1    Episode 4 brings the team together for Bingo's birthday party.  The club is

2    awash with celebrities and paparazzi.  Devine has her top fifteen prostitutes

3    working the crowd, and NBH spots Franee with Devine, making him suspicious.

4    Preach overdoses on drugs and Bingo rushes him to the emergency room.  As NBH

5    and Anamaria head to the office for privacy, Devine follows them with two of her

6    girls, ready to interrupt.  (*Id*. at 5-6.)

7    Episode 5 opens with Detective Light whispering in Bingo's ear at Preach's

8    funeral, followed by a reception at NBH's house on a waterfront.  The police arrive

9    to question NBH and Bingo about a missing police officer who was last seen being

10   beaten in the "Off Season" club.  NBH and Bingo go to the police station, where

11   Light has been arrested, and Franee is in the police chief's office.  At the club,

12   Devine tries to make peace with Anamaria.  (*Id*. at 6-7.)

13   Episode 6 opens with NBH and Bingo walking into the "Off Season" club

14   and discussing NBH's upcoming hearing with the NFL.  A new player, who is

15   NBH's high school friend, arrives.  (*Id*. at 7-8.)

16   **C.    Defendants' *Ballers* (Brenner Decl., Ex 5)**

17   *Ballers* is a comedy centered around former NFL superstar Spencer

18   Strasmore, who has recently retired and gone to work at Anderson Financial as a

19   high-end financial advisor specializing primarily in professional athletes.  (*Id.*, Eps.

20   1-3.)  At the core of the series, Spencer struggles to adjust to his new career while

21   mentoring other current and former players through the daily grind of the business

22   of football.

23   *Ballers* tells its stories in a linear fashion, each plot weaving through the

24   others with Spencer as the common core, and without a narrator.  It takes place in

25   dozens of different locations in and around Miami, many of which are brightly lit

26   and colorful.  Spencer is introduced in the first episode as a caring, empathetic

27   person who has not succeeded in his new profession because he is reluctant to

28   "monetize his friendships."  After a former teammate dies in a car accident, his

widow encourages Spencer to get his act together so he does not end up like her late husband, which appears to motivate Spencer.  The business of football plays a central role in the story.  Owners, coaches and general managers make key appearances in specific story arcs, and some scenes take place in NFL club offices, team locker rooms and on the field.

The heart of the series is Spencer's role in his clients' lives, which far exceeds money management.  He mentors them as they navigate the many pitfalls that come with life as an NFL player, and advocates for them with team management.  Spencer's focus at the outset is two major clients: Vernon Littlefield, a defensive tackle who is pushing for a record-breaking contract with the Dallas Cowboys; and Ricky Jerret, an unpredictable wide receiver.

Vernon is an up-and-coming star who asks Spencer to loan him $300,000, which he needs to support the group of family members and hangers-on who have taken up residence in his house.  Spencer drains his bank account and provides the loan, but only on the condition that Vernon sign on as a client.  Vernon is non-committal (despite taking the money), but after hoodwinking Spencer into having Anderson Financial pick up the tab for a lavish lunch for his entire entourage, Vernon ultimately signs on.

Ricky Jerret is a talented wide receiver who is looking to find stability in his career.  After getting into a publicly reported fight with a patron at a club, and being cut from the Green Bay Packers, the Dolphins ultimately give Ricky a chance after Spencer intervenes.  (*Id.*, Eps. 1-2.)  Ricky struggles to gain the acceptance of his new teammates, who haze him, and he discovers that the woman he is sleeping with happens to be his new teammate's mother.  (*Id.*, Ep. 3.)  With some apologies and a few calculations of his own (including a sting he set up with his girlfriend's uncle, a police officer), Ricky is finally welcomed by his teammates.  (*Id.*, Eps. 5-6.)  An enlightened Ricky is seen joyfully arriving at training camp astride a camel, apparently having put the past behind him.  (*Id.*, Eps. 6, 10.)

1    Another story arc involves retired lineman Charles Greane.  (*Id.*, Ep. 1.)  A

2   baby-faced giant with a loving wife with whom he has been trying to start a family,

3   he appears content to move on to the next stage of his life and takes a job selling

4   cars.  (*Id.*, Ep. 1-2.)  However, when the Dolphins' general manager offers him a

5   chance to come out of retirement, he jumps at it.  (*Id.*, Eps. 2-3, 8-9.)  He faces a

6   moral crisis when a beautiful woman starts "sexting" him, but he remains faithful to

7   his wife.  (*Id.*, Eps. 4-5.)  Ultimately, he makes the team and learns his wife is

8   finally pregnant.  (*Id.*, Eps. 9-10.)

9    Other primary characters include Joe Krutel, Spencer's colleague at Anderson

10  Financial with whom Spencer has an upbeat, protective relationship, and the owner

11  of the firm, Mr. Anderson, who is constantly pushing Spencer and Joe to deliver

12  more.  (*Id.*, Ep. 10.)  Successful sports agent Jason Antolotti represents many of

13  Spencer's clients in negotiations with their respective teams.  He has problems with

14  an uncompromising Vernon and Ricky's self-destructive tendencies, and is

15  personally distracted by his mother dating a much younger man, but ultimately

16  works hand-in-hand with Spencer to protect their mutual clients and secures a

17  lucrative contract with the Dallas Cowboys for Vernon.  (*Id.*, Eps. 2, 4, 9-10.)

18   Spencer also deals with the residue of his old life, most notably fears about

19  whether his playing years caused lasting brain damage.  (*Id.*, Ep. 4, 6, 8-9.)  He

20  seeks to make amends with a former football player whose career he ended with a

21  violent, blindside hit during a game.  (*Id.*, Ep. 1, 4 & 9.)  There are intermittently

22  thorny relationships with former lovers, one of whom blackmails Vernon with

23  unsavory photos taken at an Anderson Financial yacht party.  (*Id.*, Eps. 5-7.)

24   Though *Ballers* sometimes confronts hard truths about life in the spotlight

25  cast by professional football, there is an emphasis on optimism, embodied by

26  Spencer and each of the main characters, who are presented as mostly trying to do

27  the right thing.

28

# III.  PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED

**A.**     **The Standards For Copyright Infringement Dictate That This Case Be Dismissed With Prejudice**

"[T]he Ninth Circuit has noted that '[t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss.'"  *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007) (quoting *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945)).  "For fifty years, courts have followed this rather obvious principle and dismissed copyright claims that fail from the face of the complaint (and in light of all matters properly considered on a motion to dismiss)."  *Id.* at 1130.  Accordingly, courts frequently dismiss copyright infringement claims at the pleading stage after comparing the works at issue and determining that there is no substantial similarity between them.  *Id.* at 1130-31; *Christianson*, 149 F.2d at 203; *Identity Arts v. Best Buy Enter. Servs. Inc.*, 2007 WL 1149155, at *8-*18 (N.D. Cal. Apr. 18, 2007); *Cano v. A World Of Difference Inst.*, 1996 U.S. Dist. LEXIS 8161, at *41 (N.D. Cal. 1996); *Lake v. Columbia Broad. Sys.*, 140 F. Supp. 707, 708-09 (S.D. Cal. 1956).

To maintain a claim for copyright infringement, a plaintiff must be able to establish ownership of a valid copyright and that defendant copied elements of the work that are subject to copyright protection.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Under the second prong, a plaintiff must show both that the defendant had access to her work,[3] and that the two works are substantially

---

[3] Cast in its most charitable light, it is highly questionable that Plaintiffs' bare allegations of access "have [] nudged their claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* FAC at ¶¶ 19-21 & 23.  Nevertheless, as defendants routinely do in order to seek early dismissal of a meritless claim, *for purposes of this motion only* Defendants do not contend that Plaintiffs have failed to allege access to their works, as even where access is assumed, courts frequently dismiss claims for copyright infringement on the basis of lack of substantial similarity of protectable expression.  *See, e.g., Zella*, 529 F. Supp. 2d at 1133 ("even if access is present, Plaintiffs cannot state a claim if substantial similarity is lacking"; granting 12(b)(6)); *Gilbert v. New Line Prods.*, 2009 U.S. Dist. LEXIS 130675 at 3-7 (C.D. Cal. 2009) (assuming access and

DEFENDANTS' MOTION TO DISMISS

723508

1  similar in those elements which are protected by the Copyright Act.  *See Cavalier v.*

2  *Random House, Inc.,* 297 F.3d 815, 822 (9th Cir. 2002); *Williams v. Crichton*, 84

3  F.3d 518, 587 (2d Cir. 1996).

4        To determine whether works are substantially similar, this Court must engage

5  in an "extrinsic test."  *Funky Films, Inc.*, 462 F.3d at 1077.  The extrinsic test is

6  objective in nature.[4]  *Id.*  In applying the extrinsic test, the Court must first filter out

7  and disregard unprotectable elements, such as stock ideas, concepts, situations and

8  incidents that flow naturally from general plot lines (often referred to as "scenes a

9  faire").  *Id.* at 1077 ("[W]e filter out and disregard the non-protectable elements in

10  making [our] substantial similarity determination") (quoting *Williams*, 84 F.3d at

11  588).  Such a step is necessary because stock situations, characters and themes that

12  exist in previously published works are too common and generic to merit copyright

13  protection.  *See Zella*, 529 F. Supp. 2d at 1129, 1130, 1133-34 (holding alleged

14  similar elements of a host, guest celebrities, an interview and a cooking segment,

15  can be found in many existing television programs and are therefore not protectable

16  under the Copyright Act); *Pelt v. CBS, Inc.*, 1993 U.S. Dist. LEXIS 20464, at *8

17  (C.D. Cal. Oct. 25, 1993) (motion to dismiss granted where alleged similarities not

18  entitled to copyright protection because they were "generic (and unoriginal) ideas

19  and concepts that permeate" many television programs); *Cavalier*, 297 F.3d at 823

20  ("Familiar stock scenes and themes that are staples of literature are not protected.");

21  *see also Gilbert v. New Line Prods., Inc.*, 2010 U.S. Dist. LEXIS 141516, at *13

22  (C.D. Cal. 2010) ("general similarities … are not protected under federal copyright

23  law").

24

25

26  granting 12(b)(6) based on lack of substantial similarity); *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076, 1081 (9th Cir. 2006) (assuming access, finding no substantial similarity as a matter of law).

27  [4] While a separate test, the intrinsic test, also is used to assess substantial similarity,
28  the Court need not consider the intrinsic test where, as here, Plaintiffs fail to satisfy the extrinsic test because there can be no finding of substantial similarity without satisfying both tests. *Funky Films, Inc.*, 462 F.3d at 1077.

1    Once the Court has filtered out and disregarded the unprotectable elements,

2 the Court "must take care to inquire only whether 'the protectible elements, standing

3 alone, are substantially similar.'" *Cavalier*, 297 F.3d at 822 (quoting *Williams*, 84

4 F.3d at 588).  The protectable elements must show "not just 'similarity,' but

5 *'substantial* similarity,' and such similarity must be measured at the level of the

6 concrete 'elements' of each work, rather than at the level of the basic 'idea,' or

7 'story,' that it conveys." *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1179

8 (C.D. Cal. 2001).  The test "focuses on 'articulable similarities between the plot,

9 themes, dialogue, mood, setting, pace, characters, and sequence of events' in the two

10 works." *Funky Films, Inc.*, 462 F.3d at 1077 (quoting *Kouf v. Walt Disney Pictures*

11 *& Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)).

12    "A court may … dismiss a copyright infringement claim on a 12(b)(6) motion

13 if it concludes that no reasonable jury could find that the works are substantially

14 similar, or if it concludes that the similarities between the two works pertain only to

15 unprotected elements of the works." *Zella*, 529 F. Supp. 2d at 1131 (quotations

16 omitted).[5]  Moreover, where "[a]ny similarities between the works are far

17 outweighed by the significant differences in the plot, sequence of events, characters,

18 mood, theme, settings, and dialogue," dismissal of the copyright claim is appropriate

19 as a matter of law.  *Gilbert*, 2010 U.S. Dist. LEXIS 141516 at * 13; *see also Gilbert*,

20 2009 U.S. Dist. LEXIS 130675 at 7-10 (granting 12(b)(6) concerning motion picture

21 where the generic similarities "pale[d] … in comparison to vast differences in

22 characters, plot, mood, and themes between the two works"); *see also Funky Films,*

23 *Inc.*, 462 F.3d at 1078-81.[6]

---

24

25 [5] On a motion to dismiss, district courts routinely consider documents that are
referenced in the complaint – including the works at issue – when applying the

26 extrinsic test, even if such documents are not physically attached to the complaint.
*E.g., Zella*, 529 F. Supp. 2d at 1131-32 (reviewing works on a motion to dismiss a

27 copyright claim); *Gilbert*, 2009 U.S. Dist. LEXIS 130675 at 3, 6-7 (same); *see also*
*Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013); *Knievel v. ESPN*, 393

28 F.3d 1068, 1076-77 (9th Cir. 2005).

[6] The Court also may consider facts that may be judicially noticed on a motion to
dismiss.  Fed. R. Evid. 201; *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir.

DEFENDANTS' MOTION TO DISMISS

723508

1    While the Court should accept all factual allegations as true, it need not

2  accept as true allegations that are contradicted by documents referenced in the

3  complaint or matters subject to judicial notice.  *Steckman v. Hart Brewing, Inc.*, 143

4  F.3d 1293, 1295-96 (9th Cir. 1998); *Shwarz*, 234 F.3d at 435; *Mir v. Little Co. of*

5  *Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Sprewell v. Golden State Warriors*,

6  266 F.3d 979, 988 (9th Cir. 2001).  Thus, to make an appropriate determination in a

7  copyright infringement case, a side-by-side comparison of the disputed works

8  themselves is required.  *Williams*, 84 F.3d at 583.  Here, such a comparison leads to

9  the inevitable conclusion that the works are materially different and cannot

10  reasonably form the basis of a claim for copyright infringement.

11  **B.    There Is No Substantial Similarity Between Any Protectable Elements In**

12  **Plaintiffs' Works And *Ballers***

13    Plaintiffs' *Off Season* works and *Ballers* are radically dissimilar.

14    **1.    There is No Similarity in Plot**

15    "General plot ideas are not protected by copyright law; they remain forever

16  the common property of artistic mankind."  *Berkic v. Crichton*, 761 F.2d 1289, 1293

17  (9th Cir. 1985).  The casebooks are full of situations, like this one, where plaintiffs

18  have tried – and failed – to premise a copyright claim on a general plot idea.  *See,*

19  *e.g.*, *id.* (plot of "criminal organizations that murder healthy young people, then

20  remove and sell their vital organs to wealthy people in need of organ transplants"

21  and "the adventures of a young professional who courageously investigates, and

22  finally exposes, the criminal organization" not protected because "[n]o one can own

23  the basic idea for a story"); *Funky Films*, 462 F.3d at 1081 (general plot idea of "[a]

24

25  2000).  Specifically, "[i]n the context of copyright claims, the Court may take
   judicial notice of generic elements of creative works."  *Zella*, 529 F. Supp. at 1129
26  (granting request for judicial notice that certain elements of a "television show are
   common and prevalent in public works"); *Walker v. Time Life Films, Inc.*, 615 F.
27  Supp. 430, 438 (S.D.N.Y. 1985) (taking judicial notice that "members of the New
   York Police Department are often portrayed [in film and literary works] as Irish,
28  smokers, drinkers, and third or fourth generation police officers"); *see also* RJN at
   2-4 (listing authorities).

family-run funeral home, the father's death, and the return of the 'prodigal son,' who assists his brother in maintaining the family business" is not protected); *Kouf*, 16 F.3d at 1044-45 ("general plot idea" of life struggles of shrunken kids fighting insurmountable dangers is not protected).[7]  Simply put, a plaintiff can have no "monopoly" over a general plot idea.  *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 122 (2d Cir. 1930).

Here, Plaintiffs lay claim to the plot idea of a "football player who is essentially a business man who tries to monetize his friendships with other professional players and athletes to help grow his business." (FAC at 10:14-19).  It is well-established, however, that even if the Court were able to find such a plot in *Off Season*, such a generalized plot idea is not protectable as a matter of law. *Berkic*, 761 F.2d at 1293; *Funky Films, Inc.*, 462 F.3d at 1081; *Kouf*, 16 F.3d at 1044-45; *Bethea*, 2005 U.S. Dist. LEXIS 46944, at *31-32; *Nichols*, 45 F.2d at 122; *Abend*, 748 F. Supp. 2d at 208 & 210.

Separately, the actual, expressed plots of *Off Season* and *Ballers* are wildly dissimilar.  *Off Season* is a grim and seedy drama taking place at the main character's nightclub, which is riddled with corruption, drugs, prostitution, infidelity and criminal violence.  Its core story focuses on the deep toll such depravity wreaks on his life and the lives of his family and friends.  While the main character happens to be a professional football player, the business of football plays, at best, a negligible and non-essential role in the plot.

*Ballers*, in contrast, is a sports comedy about the careers, financial struggles and relationships of professional football players, with the main character – a retired

---

[7] *See also Bethea v. Burnett*, 2005 U.S. Dist. LEXIS 46944, at *31-32 (C.D. Cal. 2005) ("depict[ing] a group of dynamic contestants from varied backgrounds competing in business challenges in a dynamic corporate environment for promotions and benefits and, ultimately, a real job as a top-level executive" is not protected); S*heldon Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 208 & 210 (S.D.N.Y. 2010) (holding that, as a matter of law, plaintiff did not own the general plot idea of "a male protagonist, confined to his home, who spies on neighbors to stave off boredom and, in so doing, discovers that one of his neighbors is a murderer [and] [t]he voyeur is himself discovered by the suspected murderer").

football player currently working for a reputable financial management firm –
serving as the common thread as they strive for professional success, respectability,
status and wealth.  The business of football plays a significant role in the plot and,
directly or indirectly, drives many of the major story developments.

### 2.       There is No Similarity in Themes

The themes of the works are vastly different.  The overarching, pessimistic
theme of each of the *Off Season* works is that living life in the fast lane leads to
corruption and unhappiness.  Consistent with its theme, the *Off Season* characters
operate a nightclub, which also serves as the hub for their array of criminal
activities, and regularly face the dangers associated therewith – *e.g.*, an extortionate
police officer, a madam who interferes with NBH's marriage, and a drug dealer out
for revenge.  The life of virtually every character in *Off Season* spirals downward, as
shown in the trailers and screenplay, and as further revealed in the Plaintiffs' bare-
bones outline.  (*See* supra § II.B.)

The theme of *Ballers* could not be more different.  There is optimism for
those who do not give up in the face of adversity and temptation.  Spencer
Strasmore successfully develops caring, empathetic relationships with his clients
and colleagues; Charles Greane avoids temptation and remains faithful to his loving
wife; Ricky Jerret appears to salvage his NFL career by resolving conflicts with his
teammates.  (*See* supra § II.C.)  Virtually every character's life improves.  In
*Ballers*, the characters do not operate a criminal enterprise.  Rather, Strasmore tries
to help his clients appreciate that wise decisions, including those about legal
investments and professional endeavors, can lead to security for the future.

### 3.       There is No Similarity in Characters

"It is well-established that copyright law provides very limited protection to
characters presented in a creative work.  Basic character types are not
copyrightable."  *Eaton v. Nat'l Broad. Co.*, 972 F. Supp. 1019, 1027-28 (E.D. Val.
1997) (quotation omitted).  "[T]he less developed the characters, the less they can be

1   copyrighted; that is the penalty an author must bear for marking them too

2   indistinctly."  *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1452 (9th Cir. 1988)

3   (citation omitted).  Only those characters which are "especially distinctive" – such

4   as characters like "Mickey Mouse" or "Superman" – receive copyright protection

5   and may form the basis of an infringement claim.  *Id.* at 1451-52.  Additionally,

6   characters which are standard in the treatment of a given topic or are "familiar

7   figure[s]" are not protectable.  *Comins v. Discovery Commc'ns, Inc.*, 200 F. Supp.

8   2d 512, 520 (D. Md. 2002); *Williams*, 84 F.3d at 588.

9       When comparing characters, courts must consider the totality of character

10  attributes and traits, and their total concept and feel.  *See Walker v. Time Life Films,*

11  *Inc.*, 784 F.2d 44, 50 (2d Cir. 1986).  Here, other than the fact that both happen to

12  include some characters who are professional football players, the *Off Season* works

13  and *Ballers* have no similarity, let alone substantial similarity, between any

14  individual characters.  Several of the core characters in *Off Season* are members of

15  the same family who work together in the same nightclub: (1) NBH, a professional

16  football player who owns the "Off Season" club, provides drugs (marijuana and

17  "X") and sex for club patrons, takes steroids and Viagra, dates prostitutes despite

18  being married, and is described as a "cocky, arrogant, sex addict" who is

19  unrelentingly foul-mouthed when talking about women (*e.g.*, as when he talks about

20  his own initials).  (2) NBH's older brother, Bingo, a former coach who served prison

21  time.  (3) NBH's estranged wife, Anamaria, who operates the club with NBH.  (4)

22  NBH's daughter, Franee, who handles the musical performances at the club and is at

23  risk of getting caught up in NBH's degenerate lifestyle.  (*See supra* section II.B.)

24  None of these characters appears in *Ballers*.

25       Rather, Plaintiffs contend that certain of NBH's traits are spread among three

26  different characters in *Ballers*:  Strasmore, Jerret, and Krutel.  (FAC ¶ 30(d).)  A

27  plaintiff, however, cannot establish substantial similarity of copyrightable

28  expression by attempting to "show that the personal characteristics of plaintiff's

---

DEFENDANTS' MOTION TO DISMISS

1   character are split among more than one of defendants' characters." *Rose v.*

2   *Connelly*, 38 F. Supp. 54, 56 (S.D.N.Y. 1941); *see also Olson*, 855 F.2d at 1451 n.5;

3   *Shaw v. Lindheim*, 809 F. Supp. 1393, 1399 (C.D. Cal. 1992); *Green v.*

4   *Schwarzenegger*, 1995 WL 874191, *21 (C.D. Cal. 1995).

5          In any event, none of the *Ballers* characters is similar to *Off Season*'s NBH.

6   Strasmore is a *retired* defensive player struggling to switch careers. He is now a

7   financial advisor, and he strives to live a legal, honorable life. He is authentic, has

8   empathy for others, and is generally polite and professional, even though he is

9   physically intimidating. He is deeply afraid he may have suffered concussive head

10  trauma during his playing days, and seeks to make amends with a former player he

11  harmed on the field. He encourages his friends and clients to make healthy career

12  and life choices. He could not be more different from NBH.

13         Although a current player, wide receiver Ricky Jerret also is different from

14  star quarterback NBH. Jerret can be unpredictable and his lack of control

15  occasionally gets him in trouble, but his main focus is looking for career stability

16  after he has been cut from the Packers and is struggling to succeed with the

17  Dolphins. He does not own a nightclub or any business, or regularly engage in

18  criminal activity, he is not married, he does not regularly disparage women using

19  crass language, he does not have a daughter, and he did not take Viagra or steroids,

20  or sleep with prostitutes. Rather, Jerret strives to improve himself, authentically

21  opening his heart on television, and makes meaningful progress toward becoming a

22  better and more reliable person.

23         Krutel bears no resemblance whatsoever to NBH or any other character in *Off*

24  *Season*. Krutel is a bald, white man who has never played football. He does not run

25  a criminal organization, but instead pushes Strathmore to monetize his friendships as

26  they strive to forge a new path together in the world of finance.

27         Next, Plaintiffs note that two women characters have names that include

28  "Ana" and are both Latin American – *Ballers*' "Annabella" as compared to *Off*

*Season*'s "Anamaria."  (FAC at 14:9-21).  However, even identical character names in different works do not give rise to a finding of substantial similarity.  *See Counts v. Meriwether*, 2015 WL 9594469, at *12 (C.D. Cal. 2015) (finding no substantial similarity in works both containing characters named "Spencer" despite bearing "the same name and role as an unfaithful partner" to the protagonist); *Webb v. Stallone*, 910 F. Supp. 2d 681, 687-88 (S.D.N.Y. 2012) (finding no substantial similarity despite both works' inclusion of characters  named "General Garza" who were also Latin American dictators); *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 311 (S.D.N.Y. 1999) (no substantially similarity despite both works having half-vampire, half-human protagonist named "Nicholas Gaunt").

In this case, moreover, the characters actually have different names – "Anamaria" (sometimes spelled as "AnnaMaria" and "AnaMaria") in *Off Season*, on the one hand, and "Anabella" (and who is referred to as "Bella") in *Ballers*, on the other.  (Brenner Decl, Ex. 3, Screenplay at 14; *Id.*, Ex. 4, Treatment at Ep. 3; *Id.*, Ex. 5, Ballers Ep. 6 at 25:03-25:31.)  In addition, the concept of a character having a name that begins with "Ana" or "Ann" in a football-related film is hardly unique to Plaintiffs' works.  For example, the female love interest (and bar owner) in the 2000 football film *The Replacements* is named "Annabelle."  (*See* RJN at 12:11-13 & Ex. H); *see also* (*id.* at 11:14-15 & Ex. T) (football film featuring a character named "Anne"); (*id.* at 12:16-18 & Ex. U) (film featuring former football player's ex-wife named "Anne"); (*id.* at 12:19-20 & Ex. A) (football film featuring mistress named "Ann").

Furthermore, and perhaps more importantly, the two characters are not at all similar.  *Off Season's* Anamaria was once "innocent" until NBH brought her into his corrupt, criminal world.  She now operates a nightclub with her husband, stays with him despite his repeated affairs with prostitutes that he does not appear to try to hide, works arranging bands to perform at the club with her daughter, and negotiates deals to pay off a corrupt police detective.  *Ballers*' Annabella (aka Bella) does none

of these things.  Rather, she leaves Jarret and moves on with her life.[8]

Finally, and highlighting how different these works really are, Plaintiffs concede by failing to allege that there are any corresponding or comparable character in *Ballers* for *any* of the other characters in *Off Season*.  (*See generally* FAC.)  No character in *Ballers* is: a child involved in the main character's career or social life (Franee/Lil Mommah); a violent, ex-con, older brother of another character, let alone one who formerly coached football (Bingo); a corrupt, extortionist detective who is eventually arrested (Detective Light); an ex-porn star turned madam (Devine); or a white, cocaine-addicted, "pretty boy" wide receiver who recites scripture when he gets high (Preach).  Moreover, none of the *Off Season* works have comparable characters to *Ballers'* significant characters of Krutel, Littlefield, Greane, Mr. Anderson and sports agent Jason Antolotti.

### 4.      There is No Similarity in Setting

Any alleged similarity in the settings of two works arising from the fact that they take place in the same city is too general to be protectable.  *See, e.g.*, *Alexander v. Murdoch*, 2011 WL 2802923, at *7 (S.D.N.Y. 2011) (granting motion to dismiss and explaining that both works were "based in Los Angeles" was not protectable under copyright law); *Muller v. Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 446-47 (S.D.N.Y. 2011) (alleged similarity that both works "are primarily set in or near Antarctica" deemed too general to be protectable); *Flaherty v. Filardi*, 388 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2005) (finding "the fact that both [films] contain scenes set in a law office" "too general to be protectible.").  As such, the fact that both works take place in Miami (as do the 1999 football film *Any Given Sunday* and the 1977 football film *Semi-Tough*) does not support Plaintiffs' claim

---

[8] Plaintiffs also seek to manufacture a claim here from their view that both characters wear stylish clothing.  (FAC at 14:21-28).  As a matter of law, a character's non-distinctive clothing cannot support a claim for copyright infringement.  *See Shame on You Prods. Inc. v. Banks*, 2015 WL 4885221, at *30 (C.D. Cal. 2015) ("a brightly colored dress, standing alone, is entirely generic and therefore not a copyrightable concept").

1    for copyright infringement.  (*See* Defendants' RJN, at 5:1-5, 6:11-23.)

2        Here, as a viewing of the works makes clear, the actual settings are radically

3    different.  *Off Season* takes place almost exclusively in the anchor location of

4    NBH's "Off Season" club – a private, high-end nightclub catering to professional

5    athletes.  The *Off Season* trailers and screenplay take place – at night – in the club's

6    VIP room, office, stage, dance floor, and the "porn set" behind the club, none of

7    which is colorful or brightly lit.  As the trailers and screenplay reveal, the action

8    takes place mostly indoors, which, to a viewer just looking at it, could be anywhere.[9]

9        By contrast, as is quite visible to the viewer, *Ballers* is literally sundrenched.

10   There are multiple locations and the story unfolds in broad daylight, outdoors as

11   well as inside in many different places – on the football field, in the locker room, at

12   a car dealership, at the Anderson Financial offices, on Mr. Anderson's yacht, in a

13   club, in various restaurants and bars, in a doctor's office, and in several homes and

14   public places.

15       **5.    There is No Similarity in Mood**

16       The mood of *Off Season* is, overall, grim.  Every aspect is colored by greed,

17   heartless self-interest, betrayal, misery and personal tragedy.  Conversely, the mood

18   of *Ballers* is bright and ultimately exudes optimism for its characters.  It is upbeat,

19   and positive, with character conflicts that are resolved favorably.  *Ballers* has an

20   affection for its characters' outcomes that is wholly lacking in any of the *Off Season*

21   works.  Plaintiffs' and Defendants' works have drastically different moods.

22       **6.    There is No Similarity in Pace**

23       The main action in the *Off Season* trailers and screenplay – which is framed

24   within a single night – takes place almost entirely in flashback, with frequent,

25   whiplash-quick cutaways to events in the VIP room, the "porn set" and the NBH

26   interview.  For example, in the full trailer, the viewer experiences the narrative

27

28   _____
[9] The treatment for *Off Season* adds the settings of an SUV, a private hospital room,
the police station and NBH's house and his boat docked in the backyard.

jumping between the marital discord between NBH and his wife; a flashback (within the flashback) to better times between them; NBH's interview; Bingo's efforts to get Preach clean in the VIP room, and the altercation that ensues; Franee's challenge to get a band onstage; and the negotiations between Bingo and Detective Light to settle on the amount of her graft, a deal that is sealed with a sexual contract. The ever-present voiceover narration also drives the show's pace, as shots are held only for as long as it takes the narrator to deliver his or her exposition.[10]

*Ballers*, on the other hand, does not have frenetic cutaways, and the action is not a snapshot into the evening hours of one past night. Rather, the time period is measured in weeks, if not months. *Ballers* tells its stories in a linear fashion, each plot weaving through the others with Strasmore as the protagonist. Unlike *Off Season*, there is no voiceover narration in *Ballers* to control the pace and flashbacks are only used briefly, and rarely, to convey a character's thoughts.

### 7.     There is No Similarity in Dialogue

To support a claim of substantial similarity of dialogue, the plaintiff must demonstrate "extended similarity of dialogue." *Olson,* 855 F.2d at 1450. The FAC does not contain a single allegation of similarity in dialogue, which is not surprising, as there is none. (*See* FAC.) This wholesale lack of similar dialogue further reinforces the overall lack of similarity here. *See Risdon v. Walt Disney Prods.*, 1984 WL 1181 *3 (S.D.N.Y. 1984) ("Aside from the substance of the stories of the two works, the dialogue is an important basis of comparison.").

### 8.     There is No Similarity in Sequence of Events

As with the plots, which are wholly dissimilar, the sequences of events in the works are entirely different. *See* Section II. B & C, *supra.* The more fleshed out *Off Season* treatment takes an even greater divergent path than the trailers, and a review

---

[10] As set forth in the *Off Season* treatment, the future episodes appear to take place over several days, based upon NBH's getting shot, then going to the hospital, and then going to a party while leaning on a flamboyant cane while holding his side. Brenner Decl., Ex. 4, Episode Outline.

1  of the works quickly reveals that the sequence of events in *Off Season* and *Ballers*

2  bear no resemblance to each other.

3      **9.      Plaintiffs' Chart of Alleged Similarities Does Not Support Their**

4          **Claim**

5      As a threshold matter, courts have squarely rejected the approach taken by

6  Plaintiffs in the FAC to try to manufacture a copyright claim by pointing to a self-

7  serving chart or random list of purportedly similar elements between the works.

8  *See, e.g., Kouf*, 16 F.3d at 1045-46 (works are not substantially similar as a matter of

9  law where plaintiff claimed the works shared a "compilation of 'random similarities

10  scattered throughout the works[,]' such as a lawnmower scene, a sprinkler scene, the

11  presence of an attic, danger scenes, concerned parents, and kids sleeping outside

12  overnight").  As the Ninth Circuit has explained, scattershot lists of random

13  fragments of scenes and characteristics are "inherently subjective and unreliable,"

14  *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984), and "cannot support a

15  finding of substantial similarity."  *Williams*, 84 F.3d at 590.

16      Here, a review of the works themselves reveals that many of the claimed

17  similarities in Plaintiffs' chart (FAC at 11:23-18:8) are wholly unprotectable – they

18  are generic ideas and "scenes a faire", distortions of the works (apparently done to

19  make dissimilar expressions appear similar) or both.  Plaintiffs' chart perfectly

20  illustrates why courts do not rely on selective lists of purported similarities.

21      For example, Plaintiffs rely heavily on the mere presence of stadium lights,

22  football helmets, a cocky athlete driving a flashy sports car, hip-hop music, hard

23  partying, drug use, beautiful women and infidelity.  (*See* similarity nos. 1-5, 8, 12-

24  13, 15.)  Plaintiffs' position, however, flies in the face of hornbook copyright law,

25  which has long recognized that situations and incidents that flow naturally from a

26  basic plot premise, or are standard to the treatment of a certain topic, cannot support

27  a claim for infringement.  *Benay v. Warner Bros. Entm't, Inc.,* 607 F.3d 620, 624-25

28  (9th Cir. 2010); *Berkic*, 761 F.2d at 1293-94; *Anderson v. Paramount Pictures*

1   *Corp.*, 617 F. Supp. 1, 2 (C.D. Cal. 1985).  Here, each of Plaintiffs' claimed

2   similarities are staples of and standard to American cinema, television and literary

3   works, especially works involving the off-field lives of football players.  (*See* RJN

4   at pp. 4-11.)  Accordingly, these elements, which form the foundation for Plaintiffs'

5   FAC, cannot support a copyright infringement claim as a matter of law.

6       Similarly, Plaintiffs cannot realistically premise their cause of action upon

7   misleading or distorted descriptions of the works.  (*See* supra Section III.A (citing

8   authorities).)  Inclusion in a chart of alleged similarities does not transform the

9   fictional "Crocks" into the real-life "Dolphins."  (No. 25.)  Nor does it convert NBH

10   into someone who has "reinvent[ed] his career so he could take care of players like

11   himself."  (No. 24.)  Alleged similarity nos. 6, 14, 16, 22 and 27 suffer from the

12   same deficiency.  As does alleged similarity no. 9, which is one of the more glaring

13   examples evidencing how misleading these charts can be: in *Off Season*, NBH pays

14   off a corrupt police detective who extorts him so that she will (and does) turn a blind

15   eye to the ongoing criminal activities at the club, whereas in *Ballers*, Rickey Jarret

16   sets up a fake sting with the uncle of his girlfriend, a police officer who is neither

17   paid off nor turns a blind eye to actual criminal behavior, but plays along to help

18   Ricky engender the goodwill of his teammates by appearing to save the day.  (*See*

19   Brenner Decl. 1-5.)

20       Even crediting Plaintiffs' descriptions, a copyright claim cannot rest on

21   generalized ideas, such as the alleged "general similarities" of having a character

22   die, followed by a funeral, or having other characters who attend parties. *Gilbert*,

23   2010 U.S. Dist. LEXIS 141516, at *13.  This is particularly true where, as here, the

24   alleged common ideas have completely different expressions in the works.

25   (*Compare* alleged similarity nos. 10-11, 17 & 19-20 to Brenner Decl. Exs. 1-5.)

26   Moreover, the historical fact (about Kobe Bryant's highly-publicized scandal)

27   referenced in alleged similarity no. 23 is equally unprotectable.  *Benay*, 607 F.3d at

28

1  625 ("Historical facts are also unprotected by copyright law."); *Feist*, 499 U.S. at

2  347-49 (same).

3        Stripped of unprotectable ideas, "scenes a faire" and characterizations that

4  find no support in the works themselves, Plaintiffs' chart of alleged similarities is

5  left bare and provides no foundation on which to rest their claims.

6  

**IV.  <u>CONCLUSION</u>**

7        Like the many other cases before it which have been dismissed on the

8  pleadings after the court compared the works at issue, Plaintiffs' claim here is

9  "premised 'partly upon a wholly erroneous understanding of the extent of copyright

10  protection; and partly upon that obsessive conviction, so frequent among authors

11  and composers, that all similarities between their works and any others which

12  appear later must inevitably be ascribed to plagiarism.'"  *Litchfield*, 736 F.2d at

13  1358 (quoting *Dellar v. Samuel Goldwyn*, 150 F.2d 612, 613 (2d Cir. 1945)).  The

14  Court need look no further than the works themselves to determine that there is no

15  substantial similarity between *Off Season* and *Ballers* as a matter of law.

16        Accordingly, Defendants respectfully request that the Court dismiss

17  Plaintiffs' FAC, with prejudice.

18  DATED: April 15, 2016          KELLEY DRYE & WARREN LLP

19                                            Lee S. Brenner

20                                            Sarah L. Cronin

                                          Ken D. Kronstadt

21

22                            By  /s Lee S. Brenner

23                                    Lee S. Brenner

                          Attorneys for Defendants Home Box Office,

24                            Inc., 7 Bucks Entertainment, Inc., Leverage

25                            Management, Inc., Dwayne Johnson, Mark

                          Wahlberg and Stephen Levinson

26

27

28

DEFENDANTS' MOTION TO DISMISS

723508